Cora S. CLEMMER, Plaintiff,

v.

ENRON CORP., Defendant.

Civ. A. No. H–93–3550.

United States District Court, S.D. Texas.

March 30, 1995.

Cora S. Clemmer, Spring, TX, pro se.

Janet L. Lachman, Enron Litigation Unit, Houston, TX, for defendant.

**ORDER**

CRONE, United States Magistrate Judge.

Pending before the court is Plaintiff's Motion for Leave to File First Amended Complaint (# 42).

I. *Standards for Amendment*

■ The Federal Rules of Civil Procedure provide that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The policy of the federal rules is to permit liberal amend-ment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir.1981). Leave to amend, however, is by no means automatic. *Little v. Liquid Air Corp.,* 952 F.2d 841, 846 (5th Cir. 1992), *aff'd,* 37 F.3d 1069, 1073 n. 8 (5th Cir.1994) (en banc); *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 667 (5th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981); *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097, 1099 (5th Cir.1979), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). While leave to amend must be freely given, that generous standard is tempered by the necessary power of a district court to manage a case. *Shivangi v. Dean Witter Reynolds, Inc.,* 825 F.2d 885, 891 (5th Cir.1987). Thus, leave to amend a pleading is within the sound discretion of the trial court. *Little,* 952 F.2d at 846; *Hester v. International Union of Operating Eng'rs,* 941 F.2d 1574, 1579 (11th Cir.1991); *Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 210 (5th Cir.1986). In exercising its discretion, the district court may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Little,* 952 F.2d at 846; *Manzoli v. Commissioner,* 904 F.2d 101, 107 (1st Cir.1990).

II. *Undue Delay*

■ The instant case was filed on November 5, 1993, complaining of age discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"), retaliatory discharge for filing a workers' compensation claim under Tex.Lab.Code § 451.001, wrongful discharge, and intentional infliction of emotional distress. An agreed scheduling order setting the case for trial on April 24, 1995, was

entered on March 18, 1994. Under the agreed scheduling order, the discovery cutoff date was December 1, 1994, and the motion cutoff date was March 15, 1995. The scheduling order was subsequently amended to reset the case for trial on April 18, 1995, but the remaining dates were left unchanged. Now, less than one month before trial, after the discovery period has ended and the defendants have filed their motion for summary judgment, the plaintiff seeks to add four new claims to the five claims already pending. These include claims for violation of the Americans with Disabilities Act, reverse discrimination, sexual harassment, and failure to rehabilitate. The plaintiff admits that the same facts and transactions give rise to the new causes of action as to the prior claims. She makes no assertion that the amendment is necessary due to new facts uncovered in the course of discovery. Hence, there is no reason why these additional claims could not have been raised at any time during the one and one half years this case has been pending.

The plaintiff's attempt at this juncture, less than a month before trial, after the discovery cutoff date has passed and the defendants have filed their motion for summary judgment, to make such broad-sweeping amendments to her complaint constitutes undue delay and would unduly prejudice the defendants. *See Addington,* 650 F.2d at 667; *see also Little,* 952 F.2d at 846; *Hester,* 941 F.2d at 1579; *Manzoli,* 904 F.2d at 107. The United States Court of Appeals for the Fifth Circuit has previously emphasized "the fact that a defendant has filed a motion for summary judgment is significant in the determination whether a plaintiff's subsequent motion to amend is timely." *Little,* 952 F.2d at 846 n. 2; *see also Shivangi,* 825 F.2d at 890; *Addington,* 650 F.2d at 667. The court noted that "[m]uch of the value of summary judgment procedure ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of another theory." *Little,* 952 F.2d at 846 n. 2 (quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469-70 (5th Cir.1967)).

## III. *Futility*

Moreover, the amendments Clemmer wishes to make would be futile, as the proposed amended claims would be subject to dismissal for lack of jurisdiction or failure to state a claim.

### A. *Americans with Disabilities Act*

■ Clemmer seeks to amend her complaint to add a claim for violation of the Americans with Disabilities Act ("ADA"). Although the ADA was enacted on July 26, 1990, Congress delayed its effective date as applied to private employers until July 26, 1992. 42 U.S.C. § 12112 (1993). As stated by President Bush when signing the ADA into law, "[t]he phase-in periods and effective dates will permit adequate time for businesses to become acquainted with the ADA's requirements and to take the necessary steps to achieve compliance." Americans With Disabilities Act, Pub.L. 101-336, Signing Statement, 1990 U.S.C.C.A.N. at 601. The legislative history of the ADA is devoid of language that would support the retroactive application of the Act. *R.G.H. v. Abbott Labs.,* No. 93 C 4361, 1995 WL 68830, at *8 (N.D.Ill. Feb. 16, 1995). Moreover, applying the ADA retrospectively would completely undermine the express purpose of the grace period that was purposely built into the Act. *Id.* Accordingly, courts have uniformly construed the Act to apply only to wrongful conduct occurring after July 16, 1992. *O'Bryant v. City of Midland,* 9 F.3d 421, 422 (5th Cir.1993); *R.G.H.,* 1995 WL 68830, at *8; *Gonzales v. Garner Food Servs.,* 855 F.Supp. 371 (N.D.Ga.1994); *Aramburu v. Boeing Co.,* No. 93-4064-SAC, 1993 WL 544567, at *2-3 (D.Kan. Dec. 29, 1993). Clemmer was terminated on November 8, 1991. Therefore, if any alleged discrimination occurred, it was more than eight months prior to the ADA taking effect. Thus, Clemmer's disability discrimination claim is not actionable under the ADA.

### B. *Reverse Discrimination and Sexual Harassment*

■ Clemmer also seeks to add claims of reverse discrimination and sexual harass-

ment pursuant to § 704(a) of Title VII, as amended, 42 U.S.C. § 2000e–3 ("Title VII"). It is well settled, however, that courts do not have jurisdiction to consider claims brought under Title VII as to which an aggrieved party has not first exhausted her administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e–5(f)(1); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir.1994); *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1279 (5th Cir.1994); *Tolbert v. United States*, 916 F.2d 245, 247–48 (5th Cir.1990). Civil complaints filed under Title VII may only encompass "discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegation during the pendency of the case before the Commission." *National Ass'n of Gov't Employees*, 40 F.3d at 711; *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970). The primary purpose of the EEOC charge is to provide notice to the respondent of the discrimination alleged and to activate the voluntary compliance and conciliation functions of the EEOC. *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1122 (5th Cir.1981), *vacated on other grounds*, 456 U.S. 955, 102 S.Ct. 2028, 72 L.Ed.2d 479 (1982); *Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 720 (7th Cir.1969). The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory practices and policies eliminated. *Terrell*, 644 F.2d at 1123. Accordingly, the scope of the complaint is limited to the scope of the EEOC investigation. *National Ass'n of Gov't Employees*, 40 F.3d at 712 (citing 2 Larson, *Employment Discrimination* § 49.11(c)(1) at 9B–16); *Clark*, 18 F.3d at 1279; *Terrell*, 644 F.2d at 1123; *Sanchez*, 431 F.2d at 465. Thus, the failure to assert a claim of discrimination in the EEOC charge or for it to be developed in the course of a reasonable EEOC investigation of that charge prohibits the claim from later being brought in a civil suit. *National Ass'n of Gov't Employees*, 40 F.3d at 711–12; *Clark*, 18 F.3d at 1279; *Sanchez*, 431 F.2d at 465.

The charge which Clemmer filed with the EEOC alleges that Enron unlawfully discriminated against her on the basis of her age in violation of the ADEA and retaliated against her by terminating her employment for voicing complaints about age discrimination. It does not contain charges of discrimination based on sex or race. Therefore, Clemmer did not exhaust her administrative remedies with respect to her sexual harassment and reverse discrimination claims in order for them to be brought before this court.

■ Clemmer asserts, however, that she has exhausted her administrative remedies with respect to these claims because she completed an EEOC questionnaire on September 10, 1991, in which she stated that Enron discriminated against her on the basis of her age, sex, and race. Yet, the questionnaire upon which Clemmer relies is only a preliminary questionnaire filled out by an aggrieved party prior to speaking with an EEOC representative. It is not the formal charge of discrimination filed with the EEOC which provides the basis for the EEOC's subsequent investigation. Moreover, Enron never saw the questionnaire until it was produced in discovery in the pending action.

While the Court of Appeals for the Fifth Circuit refuses to limit the scope of a civil court complaint to the *exact* charge filed with the EEOC, it has not extended the scope of a Title VII suit any further than the scope of the EEOC investigation which could reasonably be expected to grow out of the administrative charge. *Terrell*, 644 F.2d at 1123; *Sanchez*, 431 F.2d at 465–66. The reasonable limits of an EEOC investigation have been held to include later amendments to a timely filed EEOC charge, as long as the limitations period for the added claims of discrimination has not run, or claims which arise as a reasonable consequence of the claims alleged in the EEOC charge. *See Clark*, 18 F.3d at 1280; *Sanchez*, 431 F.2d at 464. In *Clark*, the court allowed a claim of disparate treatment based on gender not brought in the EEOC charge to be included in a civil complaint because the claim was a reasonable consequence of the sexual harassment and retaliation claims alleged in the

EEOC charge and supporting documentation surrounding the investigation. *Clark,* 18 F.3d at 1280.

Clemmer's claims of sexual harassment and reverse discrimination, however, are not a reasonable consequence of the claims set forth in her EEOC charge. The facts considered in an investigation for age discrimination and retaliation would be entirely different from those considered in a claim for sex or race discrimination. In addition, the defendants were not given notice of these claims nor the opportunity to participate in conciliation with respect to them. Thus, it cannot be said that these claims are within the scope of the EEOC investigation that reasonably could be expected to grow out of Clemmer's EEOC charge. Therefore, Clemmer's sexual harassment and reverse discrimination claims cannot be brought before this court.

### C. *Rehabilitation Act of 1973*

■ In addition, Clemmer seeks leave to amend her complaint to add a claim under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* The Rehabilitation Act empowers disabled persons to maximize their employment through the guarantee of equal opportunity. 29 U.S.C. § 701(a). The Rehabilitation Act is a vehicle by which the United States mandates certain employers to take affirmative action to employ and advance the employment of qualified individuals with disabilities. 29 U.S.C. § 793(a). The Rehabilitation Act promotes the employment of disabled individuals by requiring "all contracts in excess of $10,000.00 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States to contain a provision requiring that the party contracting with the United States take affirmative action to employ and advance in employment qualified individuals with disabilities." 29 U.S.C. § 793(a). The Act also prohibits discrimination against the disabled by any private entity receiving federal financial assistance. 29 U.S.C. § 794.

■ Parties subject to the Act who discriminate against a disabled person on the basis of the disability may be held liable under the Rehabilitation Act. *See* 29 U.S.C. §§ 793 and 794. Section 793 enables a disabled person who believes a federal contractor has failed or refused to comply with the provisions of a federal contract relating to employment of disabled persons to file a complaint with the Department of Labor. 29 U.S.C. § 793(b). The Department of Labor then investigates the complaint and takes such action as the facts and circumstances warrant. *Id.* Although § 793 grants the Department of Labor full authority to take action against federal contractors who fail to comply with the provisions of the Rehabilitation Act, it does not provide a private right of action to disabled persons. *Local Union No. 733 of International Bhd. of Elec. Workers v. Ingalls Shipbuilding,* 906 F.2d 149, 153 (5th Cir.1990); *Fisher v. City of Tucson,* 663 F.2d 861, 867 (9th Cir.1981), *cert. denied,* 459 U.S. 881, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982); *Simpson v. Reynolds Metals Co.,* 629 F.2d 1226, 1239–40 (7th Cir.1980); *Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074, 1085 (5th Cir. 1980), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980).

■ An individual who has been discriminated against on the basis of a disability by a federally assisted private program, however, may bring a private action against the entity under § 794 of the Rehabilitation Act. 29 U.S.C. § 794(a); *Guertin v. Hackerman,* 496 F.Supp. 593, 596 (S.D.Tex.1980); *see generally Brown v. Sibley,* 650 F.2d 760, 769 (5th Cir.1981); *Simpson,* 629 F.2d at 1229; *John A. v. Gill,* 565 F.Supp. 372, 384 (N.D.Ill. 1983). In order to state a claim under this section, the plaintiff must allege: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) she is a qualified handicapped person, who solely by reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subjected to discrimination under such program or activity. *Brown,* 650 F.2d at 769; *Gill,* 565 F.Supp. at 384.

In the case at bar, Clemmer does not allege any such facts in her proposed amend-

ed complaint with regard to her failure to rehabilitate claim. Instead, she makes a broad statement that Enron has discriminated against her on the basis of her disability by not hanging a poster in an area visible to her which would inform her that Enron adhered to the Rehabilitation Act and that neither Enron nor the EEOC informed Clemmer of the availability of certain job protections for her. She goes on to state that "[o]nly recently has she learned somewhat of her rights to Rehabilitation, because of her own innocence of the law and because of fraudulent or non-existent reporting by the Defendants." Clemmer alleges no facts to support a claim under the Rehabilitation Act, but merely lists failure to rehabilitate under the Rehabilitation Act as a claim in her proposed amended complaint. Accordingly, because Clemmer has failed to state a claim under the Rehabilitation Act in her proposed amended complaint, to allow such an amendment would be futile.

### D. *Dismissed Claims*

Finally, amendment is not appropriate with respect to Clemmer's claims of retaliation for filing a workers' compensation claim, wrongful discharge, and intentional infliction of emotional distress, as these claims have already been dismissed as a result of the partial summary judgment granted in this case on March 27, 1995.

### IV. *Conclusion*

Not only did Clemmer unduly delay filing her motion for leave to amend, but the amendments she now seeks would be futile, as they would be subject to dismissal for lack of jurisdiction or failure to state a claim.

Accordingly, Plaintiff's Motion for Leave to File First Amended Complaint is DENIED.

IT IS SO ORDERED.