669 So.2d 693 (1996)
CASHBACK, INC., Plaintiff-Appellee
v.
W. Craig HERRING, et al, Defendant-Appellant.
No. 27805-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
*694 LaBorde & LaBorde, Gregory J. LaBorde, Lafayette, for appellant.
Comegys, Lawrence, Jones, Odom & Spruiell, William Paul Lawrence II, Shreveport, for appellee.
Before HIGHTOWER, BROWN and WILLIAMS, JJ.
WILLIAMS, Judge.
In this action for damages pursuant to the Louisiana Unfair Trade Practices Act, W. Craig Herring ("Herring") appeals a trial court's judgment rendered against him in favor of Cashback, Inc. ("Cashback"), and the trial court's denial of his motion for a new trial. We reverse the trial court's refusal to grant a new trial and remand for further proceedings.

FACTS
W. Craig Herring was employed by Cashback, Inc. and other entities owned and controlled by Harold Rosbottom, Jr. ("Rosbottom"). Herring's job was to develop sales of automatic teller machines and to purchase equipment to fill orders for the machines. After leaving Cashback's employ on July 1, 1993, Herring sued two corporations controlled by Rosbottom, Louisiana Gaming, Inc. and Nitro, Inc., seeking damages for unpaid wages, commissions, and other items. Attorney Michael Wainwright ("Wainwright") represented Herring in the suit.
Cashback filed the present suit in November of 1993, alleging breach of fiduciary duties and seeking recovery pursuant to the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401 et seq. It served Herring and Wainwright, although Wainwright was not enrolled as Herring's counsel of record in the suit. Cashback took Herring's deposition and subpoenaed certain documents on December 6, 1993. Herring has never filed an answer in the present suit.
Settlement negotiations were ongoing between the parties from December 6, 1993 to March 1, 1994, and Cashback made a settlement offer which Herring never accepted. The offer was not formally withdrawn. At some time subsequent to the settlement offer, Herring dismissed Wainwright. Upon his withdrawal, Wainwright sent a letter dated March 24, 1994 to Cashback's counsel, William Lawrence ("Lawrence"), requesting assurance that since Wainwright was withdrawing as counsel, Lawrence would give Herring at least two weeks to retain other counsel before taking any adverse action in the two cases pending at that time. As per Wainwright's instructions, Lawrence signed and returned to Wainwright a copy of the letter confirming their agreement in reference to the request for an extension of time in which to answer the complaint.
On April 7, 1994, precisely two weeks after the date of the request for an extension of time, the clerk of court received a "drop slip"[1] from Cashback requesting the entry of a preliminary default judgment, as Herring had taken no action in the matter. The clerk entered the preliminary default on April 11, 1994, and scheduled confirmation for April 25, 1994. Meanwhile, on March 30, 1994, Herring contacted Byron Richie ("Richie") concerning representation in both suits pending at that time. Richie spoke with Lawrence concerning the two suits pending on April 19, 1994. Richie and Lawrence dispute whether Lawrence advised Richie that he would give Herring an indefinite extension of time to respond to the suit. Lawrence did not inform Richie that the clerk had entered a preliminary default against Herring, that confirmation of the default was scheduled for April 25, 1994, or that Cashback and Rosbottom had filed additional suits against Herring. Richie declined to represent Herring on April 20, 1994, and expressed his decision to both Lawrence and Herring by letters dated April 25, 1994. The preliminary default judgment was confirmed on April 25, 1994.
After Richie notified Herring that he was not taking his case, Herring immediately retained Terry Oakley ("Oakley") to represent him. Richie and Herring eventually became aware that Cashback had taken a default judgment in the case, and both Richie and *695 Oakley timely filed motions for new trial. The motions were consolidated for hearing on June 13, 1994. The trial court denied the motions for new trial by written opinion issued on December 15, 1994. Herring appeals both the denial of the motions for a new trial and the confirmation of the default judgment.

DISCUSSION
Herring contends the trial court abused its discretion by denying his motions for a new trial. He argues that the trial court incorrectly applied the law to the facts of the case, particularly in its failure to construe the evidence pursuant to the general policy consideration, that every litigant should be allowed his day in court. We agree.
LSA-C.C.P. Art. 1973 provides that the trial court may grant a new trial if good grounds upon which to do so exist. In applying this article, the facts and circumstances of each individual case must be examined. When an examination of the facts convinces the trial judge that the judgment would result in a miscarriage of justice, a new trial should be ordered. Lamb v. Lamb, 430 So.2d 51 (La.1983). Although the trial court has much discretion in determining if a new trial is warranted, an appellate court can set aside the ruling of the trial judge in a case of manifest abuse of that discretion. Lamb, supra; Hardy v. Kidder, 292 So.2d 575 (La. 1973); Meshell v. Russell, 589 So.2d 86 (La. App. 2d Cir.1991). Due to the general policy consideration, weighing in defendant's favor, that every litigant should be allowed his day in court, appellate courts must be particularly cautious in examining the circumstances underlying a properly confirmed default judgment when a timely motion for new trial is denied thereafter. Lamb, supra; Meshell, supra.
In considering the circumstances surrounding a properly confirmed default judgment, it should be noted that the mere failure to file an answer, without more is insufficient grounds to grant a new trial. Lamb, supra, citing DeFrances v. Gauthier, 220 La. 145, 55 So.2d 896 (La.1951). However, a new trial can be granted in the interest of justice, where a judgment has gone by default against the defendant because of a misunderstanding by his or her attorney. Elchinger v. Lacroix, 192 La. 908, 189 So. 572 (La.1939).
We find that in the present case, the trial judge abused his discretion in failing to grant a new trial as several facts underlying the judgment indicate that Herring should be allowed to assert his case on the merits:
1) Although Herring had not filed an answer in the case, he had attended a deposition and produced requested documents connected with the present action.
2) Lawrence was aware that Herring and Wainwright were negotiating whether Wainwright would represent Herring in the current action. Thus, Lawrence was aware that Herring was seeking representation, and intended to defend the suit.
3) A settlement offer encompassing the present action had been made, and had not been rejected or withdrawn at the time of Wainwright's withdrawal, or any time subsequent thereto.
4) Lawrence agreed to an extension of at least two weeks, per the request of Wainwright, in order to allow Herring time to seek the services of another attorney. Therefore, he was aware that Herring intended to seek counsel and defend the suit.
5) Herring diligently sought representation in this matter by contacting Byron Richie, who in turn, prior to confirmation of the default, contacted Lawrence to discuss the case. Therefore, Lawrence was aware of Herring's search for counsel to defend the suit before he confirmed the default.
6) There is a dispute between Richie and Lawrence as to whether Richie was able to secure an additional extension of time in which Herring could retain counsel and defend the suit. However, the trial judge specifically found that neither Richie nor Lawrence was at fault for their beliefs as to whether an extension had been secured. Therefore, there is a misunderstanding as to whether an additional extension was granted.
*696 Under the circumstances of this case, Herring could reasonably have believed that his interests were being protected, and that he had additional time to secure counsel and answer the suit. Although Wainwright did not formally enroll as counsel in this suit, he handled the settlement negotiations and took steps to protect Herring after Herring dismissed him. Moreover, Herring did contact a new attorney, Byron Richie, six days after dismissing Wainwright. Although Richie did not enroll as counsel, he sought an extension of time in which Herring could answer the suit. Due to a misunderstanding between Richie and Lawrence, Herring reasonably relied on an assurance that he still had time in which to file an answer. Furthermore, after notification that Richie would not take the case, Herring immediately hired Oakley to defend the suit.
A review of the facts in the record shows that Herring was taking steps to defend the suit, and did not merely fail to timely file an answer. Therefore, we conclude that a miscarriage of justice would result by depriving Herring of his day in court.
Herring also submitted several other arguments in support of his assertion of abuse of discretion, as well as an additional assignment of error asserting that the trial court should not have confirmed the default judgment based on the evidence presented. As we have reversed the denial of the new trial for the reasons expressed, we decline to address those additional arguments and assigned errors.

CONCLUSION
For the foregoing reasons, we reverse the trial courts' denial of the motion for a new trial and remand the case to the trial court for further proceedings. Costs of this appeal are assessed to appellee, Cashback, Inc.
REVERSED AND REMANDED.
NOTES
[1] A "drop slip" is the method used pursuant to Local Rule 6 of the 1st Judicial District Court to request the entry of a preliminary default judgment.