742 So.2d 120 (1999)
W. Craig HERRING, Plaintiff-Appellant,
v.
Michael WAINWRIGHT, et al., Defendants-Appellees.
No. 32,360-CA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*121 John Haas Weinstein, Opelousas, Tom St. Germain, Counsel for Appellant.
Rountree, Cox, Guin & Achee by Gordon E. Rountree, Counsel for Appellee Michael H. Wainwright.
Cook, Yancey, King & Galloway by Herschel E. Richard, Jr., Shreveport, Counsel for Appellee Byron Richie.
Before WILLIAMS, GASKINS, KOSTELKA, JJ.
KOSTELKA, J.
In this legal malpractice action, plaintiff alleges that the negligent acts of two attorneys resulted in the entry of a default judgment against him. Upon granting summary judgment in favor of one counsel and sustaining an exception of no right of action in favor of the other, the trial court dismissed plaintiff's claims. Finding no error in those rulings, we affirm.

Facts and Procedural History
The factual background concerning the legal matter which gave rise to the instant malpractice suit has previously been set forth by this court in Cashback v. Herring, 27,805 (La.App.2d Cir.02/28/96), 669 So.2d 693:
W. Craig Herring was employed by Cashback, Inc. and other entities owned and controlled by Harold Rosbottom, Jr. ("Rosbottom"). Herring's job was to develop sales of automatic teller machines and to purchase equipment to fill orders for the machines. After leaving Cashback's employ on July 1, 1993, Herring sued two corporations controlled by Rosbottom, Louisiana Gaming, Inc. and Nitro, Inc., seeking damages for unpaid wages, commissions, and other items. Attorney Michael Wainwright ("Wainwright") represented Herring in the suit.
Cashback filed the present suit in November of 1993, alleging breach of fiduciary duties and seeking recovery pursuant to the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401 et seq. It served Herring and Wainwright, although Wainwright was not enrolled as Herring's counsel of record in the suit. Cashback took Herring's deposition and subpoenaed certain documents on December 6, 1993. Herring has never filed an answer in the present suit.
Settlement negotiations were ongoing between the parties from December 6, 1993 to March 1, 1994, and Cashback made a settlement offer which Herring never accepted. The offer was not formally withdrawn. At some time subsequent to the settlement offer, Herring dismissed Wainwright. Upon his withdrawal, Wainwright sent a letter dated March 24, 1994 to Cashback's counsel, William Lawrence ("Lawrence"), requesting assurance that since Wainwright was withdrawing as counsel, Lawrence would give Herring at least two weeks to retain other counsel before taking any adverse action in the two cases pending at that time. As per Wainwright's instructions, Lawrence signed and returned to Wainwright a copy of the letter confirming their agreement in reference to the request for an extension of time in which to answer the complaint.

*122 On April 7, 1994, precisely two weeks after the date of the request for an extension of time, the clerk of court received a "drop slip" [footnote omitted] from Cashback requesting the entry of a preliminary default judgment, as Herring had taken no action in the matter. The clerk entered the preliminary default on April 11, 1994, and scheduled confirmation for April 25, 1994. Meanwhile, on March 30, 1994, Herring contacted Byron Richie ("Richie") concerning representation in both suits pending at that time. Richie spoke with Lawrence concerning the two suits pending on April 19, 1994. Richie and Lawrence dispute whether Lawrence advised Richie that he would give Herring an indefinite extension of time to respond to the suit. Lawrence did not inform Richie that the clerk had entered a preliminary default against Herring, that confirmation of the default was scheduled for April 25, 1994, or that Cashback and Rosbottom had filed additional suits against Herring. Richie declined to represent Herring on April 20, 1994, and expressed his decision to both Lawrence and Herring by letters dated April 25, 1994. The preliminary default judgment was confirmed on April 25, 1994.
After Richie notified Herring that he was not taking his case, Herring immediately retained Terry Oakley ("Oakley") to represent him. Richie and Herring eventually became aware that Cashback had taken a default judgment in the case, and both Richie and Oakley timely filed motions for new trial. The motions were consolidated for hearing on June 13, 1994. The trial court denied the motions for new trial by written opinion issued on December 15, 1994.
On appeal, finding that the trial court should have granted the new trial motions, this court reversed and remanded for further proceedings.
During the pendency of that appeal, Herring filed the instant legal malpractice suit against Wainwright and Richie. He claims damages for the entry of the default judgment which was allegedly caused by their negligenceboth in failing to answer the lawsuit filed by Cashback and in the lack of clarity in the extensions purportedly obtained. After the default judgment was reversed, Herring maintained that his remaining damages consisted of legal fees (totaling over $29,000) and mental anguish. In response to Herring's suit, Richie filed a motion for summary judgment and Wainwright filed an exception of no right of action. The trial court granted defendants' requests and dismissed Herring's suit with prejudice. This appeal ensued.

Richie's Summary Judgment
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Moreover, through a 1997 amendment to Article 966, the jurisprudential presumption against granting summary judgment has been eliminated. See Acts 1997, No. 483. Instead, the enacted changes have leveled the playing field for the litigants. Documentation submitted by the parties will now be scrutinized equally and the earlier overriding presumption in favor of trial on the merits has been removed. Koeppen v. Raz, 29,880 (La.App.2d Cir.10/29/97), 702 So.2d 337; Gardner v. LSU MC, 29,946 (La. App.2d Cir.10/29/97), 702 So.2d 53. Indeed, summary judgment is now favored to secure the just, speedy, and inexpensive determinations of all except certain disallowed actions. La. C.C.P. art. 966 A(2).
Under the current summary judgment approach, if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent *123 of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. And, as consistently noted in La. C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. Koeppen, supra; Gardner, supra. An appellate court reviews summary judgment de novo under the same criteria that govern a trial court's considerations regarding the appropriateness of summary judgment. Id.
In examining the question of whether an attorney has committed legal malpractice, the court must consider that an attorney has a duty to exercise at least that degree of care, skill, and diligence exercised by prudent attorneys practicing in his community or locality. He is not required to exercise perfect judgment in every instance, but his license to practice and his contract for employment hold out to a client that he possesses certain minimal skills, knowledge, and abilities. Morgan v. Campbell, Campbell & Johnson, 561 So.2d 926 (La.App. 2d Cir.1990); Dixon v. Perlman, 528 So.2d 637 (La.App. 2d Cir. 1988); Burris v. Vinet, 95-0668 (La.App. 1st Cir.11/09/95), 664 So.2d 1225. To assert a claim for legal malpractice, a client must demonstrate that there was an attorney-client relationship, that the attorney was guilty of negligence or professional impropriety in the relationship with the client, and that the attorney's misconduct caused the client some loss. Burris, supra.
In his answer to the original petition, Richie both denies the existence of an attorney-client relationship between himself and Herring[1] and controverts any claim of misconduct on his part. Later, in his motion for summary judgment, Richie focuses on the latter element as one for which there is no factual dispute. Specifically, Richie contends that Herring will be unable to carry his burden of proving that Richie violated the standard of care for attorneys in his community. In that regard, Richie offered the affidavit of Tommy Johnson ("Johnson"), an attorney familiar with the degree of care, skill, and diligence exercised by prudent attorneys practicing law in Caddo Parish. Johnson stated that it is common practice for attorneys in this area to advise opposing counsel prior to confirming a default judgment and Richie reasonably assumed that Lawrence would have advised him of the pendency of any default against Herring. Johnson concluded that Richie did perform within that degree of care exercised by prudent attorneys in Caddo Parish. The trial court agreed and granted summary judgment in Richie's favor.
On appeal, Herring attacks the judgment on three grounds. First, he contends that the trial court erred in considering Johnson's expert testimony and in weighing the contradictory opinions of two experts. Under the new summary judgment law, however, our courts are more willing to consider expert testimony in certain circumstances. See, e.g., Gardner, supra and discussion therein. Yet, even were we to reject Johnson's conclusion (that Richie did not commit malpractice), we are still left with his factual statements regarding the standard of care in Caddo Parish from which we would draw our own conclusion, based on the uncontroverted facts, that Richie committed no malfeasance in connection with his relationship with Herring.
Moreover, it is evident that the trial court did not choose Johnson's opinion over that offered by Herring's expert, Leslie Schiff. Instead, the trial court rejected Schiff's qualifications to comment on the standard of care in Caddo Parish inasmuch *124 as he practices in Opelousas. Thus, Herring offered no relevant affidavit to controvert Richie's proof that his conduct fell within the appropriate standard of care.
Next, Herring challenges the lower court's use of the locality rule for establishing the standard of care. Yet, as noted above, the jurisprudence regarding legal malpractice is replete with citations to the "degree of care, skill, and diligence exercised by prudent attorneys practicing in his community or locality." We find no merit to Herring's contention that Richie should be held to a state-wide standard. Furthermore, our supreme court has determined that failure to inform opposing counsel of an intention to take a default judgment constitutes an ill practice which would serve to nullify a judgment per La. C.C.P. art.2004. Russell v. Illinois Central Gulf Railroad, 96-2649 (La.01/10/97), 686 So.2d 817. In light of that pronouncement, we see no valid basis for challenging Johnson's similar statement.
Finally, Herring argues that he can prove his case of malpractice by demonstrating that Richie violated his own standard procedures in this circumstance. True enough, Richie testified that his normal routine, upon accepting a case, is to contact opposing counsel and obtain a written extension of time in which to file responsive pleadings. He did not follow this protocol with Herring's case. However, a more complete examination of that testimony reveals that Richie further commented that he believed obtaining a written extension would be duplicative where, as here, such an extension had already been procured. Richie trusted Wainwright's letter as sufficient under the circumstances. Moreover, Richie believed that he had obtained an oral extension from Lawrence as is evidenced by Richie's April 25 letter declining representation of Herring. Indeed, as this court previously noted in Cashback, supra, there was a misunderstanding between Richie and Lawrence regarding any further extension of time; and, the trial court therein specifically found neither attorney to be at fault in his belief on this issue.
Finding no merit to Herring's challenges, and upon conducting a de novo review of the record, we find that the trial court correctly granted summary judgment in favor of Richie.

Wainwright's No Right of Action
The function of an exception of no right of action is to determine whether a plaintiff has an actual interest in the action. La. C.C.P. art. 927(A)(5). In determining whether a plaintiff has a right of action, the court considers whether that plaintiff belongs to a particular class of persons to whom the law grants a remedy for the alleged grievance, or whether the plaintiff has an interest in judicially enforcing the right asserted. Grocery Supply v. Winterton Food Stores, 31,114 (La.App.2d Cir.12/09/98), 722 So.2d 94. Here, Wainwright argues that, inasmuch as there was no attorney-client relationship between him and Herring as to the Cashback lawsuit, Herring does not fall within the class of people to whom the law grants a remedy.[2] More particularly, the law requires that a plaintiff in a legal malpractice case have an attorney-client relationship with the named defendant. See Morgan, supra.
Wainwright never enrolled as counsel in the Cashback lawsuit and made it quite clear on the record of Herring's suit that his role therein did not extend to representing Herring in the Cashback lawsuit. More importantly, Herring chose to terminate all relationships with Wainwright well before the alleged acts of malpractice occurred. On March 23, 1994, Herring discharged Wainwright and retrieved his file from the attorney's office. The extension Wainwright obtained for Herring in the *125 Cashback suit after that date was a mere courtesy, not an extension of the attorney-client relationship.
Despite Herring's argument to the contrary, we believe the exception of no right of action to be a proper procedural vehicle under these circumstances. Of course, Wainwright could have obtained the same result through a motion for summary judgment. We find no fault, however, in his choice of motion. Furthermore, as Wainwright notes, this court has the authority, pursuant to La. C.C.P. art. 2164, to render any judgment which is just, legal, and proper upon the appellate record. A judgment dismissing a legal malpractice claim brought by a plaintiff against a defendant with whom he does not share an attorney-client relationship is, indeed, just, legal, and proper.

Conclusion
For the foregoing reasons, the judgments below are affirmed at Herring's cost.
AFFIRMED.
NOTES
[1] Richie asserts that he never accepted Herring as a client. Instead, he retained the file in order to review the case and make a decision regarding representation. Herring believes that Richie agreed to take the case and the delay concerned only the calculation of the fee which would be charged.
[2] Wainwright admits that, because Herring's petition asserts the existence of an attorney-client relationship, Herring has stated a cause of action. However, upon proof of the falsity of that statement, Herring has no right of action.