927 So.2d 1267 (2006)
Imogene KHAN and Richard E. Early, Plaintiffs-Appellants
v.
Elton B. RICHEY and Charles E. Grubb, Defendants-Appellees.
No. 40,805-CA.
Court of Appeal of Louisiana, Second Circuit.
April 19, 2006.
Rehearing Denied May 11, 2006.
*1269 Daniel J. Mackel, Jr., New Orleans, Dwan S. Hilferty, Metairie, for Appellants.
Cook, Yancey, King & Galloway, by Herschel E. Richard, Jr., Shreveport, for Appellees.
Before BROWN, WILLIAMS, and PEATROSS, JJ.
BROWN, C.J.
This appeal has been taken by plaintiff, Imogene Khan, from the trial court's grant of summary judgment in favor of defendants, Elton Richey and Charles Grubb, dismissing with prejudice her action for legal malpractice. For the reasons set forth below, we affirm.

Facts and Procedural Background
From December 1990 to May 2000, Imogene Khan was employed by Southern University as a member of its campus police force in Shreveport. Ms. Khan, who is a white female, maintains that during the course of her employment with Southern University, she was subjected to racial and sexual harassment. She also contends that in October 1999, she was denied a promotion to the position of chief of the campus police force due to her sex and/or race and on May 22, 2000, she was wrongfully discharged by the university for the same discriminatory reason(s).
In December 1999, Ms. Khan hired Shreveport attorneys Elton Richey and Charles Grubb to pursue employment discrimination claims against Southern University.[1] On December 13, 1999, as a prerequisite to filing suit on behalf of Ms. Khan, Richey and Grubb filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), notifying it of her harassment *1270 and failure to promote claims. Thereafter, on February 11, 2000, Richey and Grubb filed suit against Southern University and individual defendants in the U.S. District Court for the Western District of Louisiana, Shreveport Division, asserting both federal and state employment discrimination claims on behalf of Ms. Khan.
On May 22, 2000, Ms. Khan was terminated from her employment at Southern University for what she claims are discriminatory reasons. On the other hand, the university takes the position that Ms. Khan, who had not worked since September 1999, refused to return to work in May 2000 when she had used up her leave time. In May of 2001, Ms. Khan received a "Charge of Discrimination and Affidavit" from the EEOC, which formally recapitulated her harassment and failure to promote claims and listed the relevant witnesses. Ms. Khan verified the allegations and returned the documents to the EEOC, thus "perfecting" her charge as to those claims.
In July 2001, Richey and Grubb filed a motion to withdraw as Ms. Khan's counsel of record. This motion was granted on September 28, 2001, and attorney Thomas David Jones enrolled on Ms. Khan's behalf. The EEOC sent Ms. Khan a notice (also known as a "right to sue" letter) entitled "Dismissal and Notice of Rights" informing her that it was concluding its administrative investigation of her harassment and failure to promote claims because the matter was in federal court. On March 3, 2002, Jones passed away and on July 1, 2002, Daniel Mackel and Dwan Hilferty enrolled as counsel of record on Ms. Khan's behalf.
Thereafter, on July 16, 2002, Southern University filed a motion for summary judgment urging its qualified immunity. This motion was denied by the federal district court on February 11, 2003. The university appealed to the Fifth Circuit and while the matter was pending on appeal, Ms. Khan settled her claims with Southern University for approximately $122,000 and the matter was dismissed with prejudice on the parties' joint motion.
On December 22, 2003, six days after Ms. Khan settled her discrimination claims against Southern University, she filed the instant legal malpractice action against her original attorneys, Elton Richey and Charles Grubb (hereinafter when the term "defendants" is used, it will refer to them exclusively), in state district court. On July 22, 2004, defendants filed an answer and on November 16, 2004, they filed a motion for summary judgment seeking dismissal of Ms. Khan's suit. According to defendants, there was no genuine issue of material fact as to whether they provided negligent representation to Ms. Khan in her employment discrimination claims and further, plaintiff could not establish any damages as a result of her attorneys' alleged malpractice because she voluntarily settled her claims in the underlying suit.
A hearing was held on the motion for summary judgment on January 24, 2005, and defendants' motion was denied. Richey and Grubb filed a motion for reconsideration, which was heard on May 23, 2005. The trial court granted defendants' motion for reconsideration and rendered summary judgment in their favor, dismissing with prejudice Ms. Khan's claims against them. It is from this judgment that plaintiff has appealed.

Discussion
In determining whether summary judgment is appropriate, appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is proper. Suire v. Lafayette City-Parish Consolidated Government, 04-1459 (La.04/12/05), 907 So.2d 37; Costello v. Hardy, 03-1146 (La.01/21/04), 864 So.2d 129; Lambert v. *1271 State of Louisiana, 40,170 (La.App. 2d Cir.09/30/05), 912 So.2d 426.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The supreme court has recognized that a "genuine issue" is a "triable issue," an issue on which reasonable persons could disagree. Champagne v. Ward, 03-3211 (La.01/19/05), 893 So.2d 773; Jones v. Estate of Santiago, 03-1424 (La.04/14/04), 870 So.2d 1002. A fact is material for summary judgment purposes when its existence or nonexistence may be essential to claimant's cause of action under the applicable theory of recovery. La. C.C.P. art. 966; NAB Natural Resources v. Willamette Industries, Inc., L.L.C., 28,555 (La.App. 2d Cir.08/21/96), 679 So.2d 477. In other words, material facts are those which potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.07/05/94), 639 So.2d 730; DeBrun v. Tumbleweeds Gymnastics, Inc., 39,499 (La.App. 2d Cir.04/06/05), 900 So.2d 253.
To establish a claim for legal malpractice, a plaintiff must prove the existence of an attorney-client relationship, negligent representation by the attorney, and loss caused by that negligence. Costello v. Hardy, 03-1146 (La.01/21/04), 864 So.2d 129; Herring v. Wainwright, 32,360 (La.App. 2d Cir.09/22/99), 742 So.2d 120, writ denied, 99-3065 (La.01/07/00), 752 So.2d 865. Failure to prove any one of these elements is fatal to the claim. Costello, supra; Whittington v. Kelly, 40,386 (La.App. 2d Cir.12/14/05), 917 So.2d 688.
An attorney is not required to exercise perfect judgment in every instance, but his license to practice and his contract for employment hold out to a client that he possesses certain minimal skills, knowledge, and abilities. Herring, supra; Morgan v. Campbell, Campbell & Johnson, 561 So.2d 926 (La.App. 2d Cir.1990); Burris v. Vinet, 95-0668 (La.App. 1st Cir.11/09/95), 664 So.2d 1225.
An attorney is liable to his client for the damages caused by the attorney's negligence in handling the client's business, providing that the client proves by a preponderance of the evidence that such negligence is the proximate cause of the loss claimed. Bauer v. Dyer, 00-1778 (La. App. 5th Cir.02/28/01), 782 So.2d 1133, writ denied, 01-0822 (La.05/25/01), 793 So.2d 162. The proper method of determining whether an attorney's malpractice is a cause in fact of damage to his client is whether the performance of that act would have prevented the damage. Bauer, supra; Prestage v. Clark, 97-0524 (La.App. 1st Cir.12/28/98), 723 So.2d 1086, writ denied, 99-0234 (La.03/26/99), 739 So.2d 800; Ault v. Bradley, 564 So.2d 374 (La. App. 1st Cir.1990), writ denied, 569 So.2d 967 (La.1990).
Plaintiff offered the affidavit of local attorney Allison Jones in an attempt to create issues of fact as to whether defendants were negligent in their representation of Ms. Khan.[2] In her affidavit, Ms. Jones *1272 opined that attorneys Richey and Grubb breached the applicable standard of care in their representation of Ms. Khan in that:
(1) They failed to insure that Ms. Khan had a timely and adequate charge of discrimination filed with the EEOC;
(2) They failed to include a claim for wrongful and retaliatory termination of employment for the charge filed with the EEOC in June of 2001, even though Ms. Khan was terminated from her employment with Southern University in May of 2000;
(3) They failed to insure that Ms. Khan verified a charge of discrimination within the deadline established by law;
(4) They failed to amend the original charge or file a new charge of discrimination with the EEOC when Ms. Khan was terminated; and
(5) They failed to amend Ms. Khan's lawsuit to assert a new cause of action for discrimination.
We first note that the record shows that defendants filed a "Charge of Discrimination" with the EEOC on Ms. Khan's behalf on December 13, 1999. As a prerequisite to filing a federal employment discrimination lawsuit, a claimant must file a charge of discrimination with the EEOC within 300 days of the allegedly discriminatory act. 42 U.S.C. § 2000e-5(e)(1)(2003); Frank v. Xerox Corporation, 347 F.3d 130 (5th Cir.(Tex.) 2003); Byers v. Dallas Morning News, Inc., 209 F.3d 419 (5th Cir.(Tex.) 2000). In the complaint, defendants alleged that Ms. Khan had been harassed at work due to her race and sex and that this harassment culminated in her superiors denying her a promotion to the chief of the campus police force in May 1999. Clearly, plaintiff's charge of discrimination was timely filed with the EEOC. Allegation (1) in Ms. Jones' affidavit is not supported by the evidence of record.
As for allegation (3), the record likewise fails to support Ms. Jones' statement that defendants failed to insure that Ms. Khan verified a charge of discrimination within the legal deadline. Once an administrative charge of discrimination is filed with the EEOC, the commission begins an investigation into the claimant's allegations before it generates a detailed affidavit for the claimant to sign, which formalizes the charge. Edelman v. Lynchburg College, 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). When and if the claimant verifies the affidavit by signing it, the charge is considered to be perfected. Id. A perfected charge "relates back" to the date of the filing of the initial charge of discrimination with the EEOC. Id.
In the instant case, a "Notice of Charge" was sent to Ms. Khan on November 1, 2000, requesting that she sign, date, and return the enclosed charge of discrimination and affidavit within 30 days, which she did. With the assistance of defendants, Ms. Khan not only completed the forms sent by the EEOC, she prepared a very lengthy, detailed position statement which elaborated upon and supplemented her original filing. All of these documents were returned within the deadline set by the EEOC. Thereafter, the EEOC sent plaintiff a "Dismissal or Notice of Rights" letter (also known as a "right to sue" letter) on September 27, 2001, indicating that the reason the agency was closing its file was because she had filed her claim in federal court.
Taking the remaining opinions expressed in Ms. Jones' affidavit as true, but *1273 not that these acts/inactions (not filing a new EEOC charge or amending the original EEOC charge to alleged wrongful/retaliatory discharge and failing to amend plaintiff's federal claim) constitute attorney negligence, we nonetheless find that plaintiff has failed to prove that she has sustained a loss as a result of her former attorneys' acts/inactions.
As a condition precedent to bringing a Title VII claim, a plaintiff must exhaust her available administrative remedies by pursuing the appropriate claim with the EEOC. National Association of Government Employees v. City Public Service Board, 40 F.3d 698 (5th Cir.(Tex.) 1994); Tolbert v. United States, 916 F.2d 245 (5th Cir.(Tex.) 1990). Once a Title VII complaint is filed, however, the court's inquiry is not limited only to the exact charge previously brought before the EEOC. The scope of inquiry encompasses discrimination like or related to allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the EEOC. National Association of Government Employees, supra; Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir.(Tex.) 1970). Courts have interpreted the "like or related to" language to permit claims that could reasonably be expected to grow out of the charge of discrimination. Thomas v. Texas Department of Criminal Justice, 220 F.3d 389 (5th Cir.(Tex.) 2000); Young v. City of Houston, Texas, 906 F.2d 177 (5th Cir.(Tex.) 1990).
In Harris v. Parker College of Chiropractic, 286 F.3d 790 (5th Cir.(Tex.) 2002), the defendant argued that the plaintiffs couldn't assert constructive discharge in their federal complaint because they had not raised it in their original EEOC charge. The court observed that in the Fifth Circuit, a claimant is not required to assert all legal claims in her EEOC charge; it is sufficient if, in the EEOC charge the claimant asserts the facts that are the basis for the legal claims. See also Sanchez, supra. More specifically, in Gupta v. East Texas State University, 654 F.2d 411 (5th Cir.(Tex.) 1981), the Fifth Circuit held that it was unnecessary for a plaintiff to exhaust administrative remedies prior to asserting a retaliation claim growing out of an earlier chargethe district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court. See also Barrow v. New Orleans Steamship Association, 932 F.2d 473 (5th Cir.(La.) 1991); Gottlieb v. Tulane University of Louisiana, 809 F.2d 278 (5th Cir.(La.) 1987); Green v. Louisiana Casino Cruises, Inc., 319 F.Supp.2d 707 (M.D.La.2004).
In light of the above jurisprudence, we find that, as a matter of law, defendants' failure to either supplement the original EEOC charge or file a new charge did not cause damage or loss to Ms. Khan. Nor can we say that defendants' failure to amend plaintiff's federal complaint caused her any damage or loss.
Federal Rule of Civil Procedure 15(c) provides that an amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. The policy of the federal rules is to permit liberal amendment of pleadings to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594 (5th Cir.(La.) 1981); Clemmer v. Enron Corp., 882 F.Supp. 606 (S.D.Tex.1995). In employment discrimination cases in which the *1274 claimant sought to amend his or her federal complaint to add new claims which had not first been presented to the EEOC, courts have applied the "like or related to" standard set forth in Sanchez, supra, in determining whether to allow amendment. See Clemmer, supra; McKinney v. Eastman Kodak Company, 975 F.Supp. 462 (W.D.N.Y.1997); Lazuran v. Kemp, 142 F.R.D. 466 (W.D.Wash.1991); Cummins v. E G & G Sealol, Inc., 690 F.Supp. 134 (D.R.I.1988).
In the instant case, defendants filed a federal complaint on behalf of Ms. Khan in February 2000. She claims that she was wrongfully terminated in May 2000. Prior to withdrawal from their representation of Ms. Khan in September 2001, defendants certainly could have amended plaintiff's complaint to add claim for wrongful/retaliatory discharge, assuming this claim to be "like or related to" the original EEOC charge of discrimination. However, plaintiff promptly secured new counsel and her federal suit progressed until July 16, 2002, when Southern University filed a motion for summary judgment. Although plaintiff's current attorneys had only been enrolled as counsel of record for two weeks at that time, they managed to successfully oppose the university's summary judgment motion, which was denied on February 11, 2003. While the matter was pending on appeal to the Fifth Circuit, in December of 2003, Ms. Khan settled her discrimination and harassment claims with Southern University. Prior to that time, neither of Ms. Khan's subsequent attorneys took steps to amend her federal complaint, despite having ample time to do so (there was a lapse of approximately two years between the time that defendants withdrew from the case until Ms. Khan's settlement with Southern University).[3]
After our review of the record and application of the rules regarding summary judgment, La. C.C.P. art. 966, we find no error in the trial court's grant of summary judgment in favor of attorneys Richey and Grubb. There are no genuine issues of material fact on the third element required for the viability of plaintiff's malpractice claim, a loss caused by attorney negligence. Quite simply, plaintiff can not prove that she sustained a loss as a result of defendants' actions or inactions.
As noted above, the correct method to determine whether an attorney's negligent actions are a cause in fact of damage to his client is whether the performance of these acts would have prevented the damage. Prestage, supra; Ault, supra. In the instant case, what Ms. Khan has lost is the ability to pursue a claim for wrongful/retaliatory discharge against her former employer, Southern University. The cause of her loss, however, is not defendants' allegedly negligent actions or inactions, but her own decision to settle and compromise her claims with the university. Her loss or damage, if any, was precipitated by her decision to "take the money and run," a tactical and strategical move that obtained for her $122,000 (less her current counsel's share) plus enough credits so she could receive full retirement benefits. See Gross v. Pieno, 04-820 (La.App. 5th Cir.12/28/04), 892 So.2d 662, writ denied, 05-0218 (La.04/22/05), 899 So.2d 582; Spellman v. Bizal, 99-0723 (La.App. 4th Cir.03/01/00), 755 So.2d 1013.

Conclusion
For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs are assessed to plaintiff-appellant, Imogene Khan.
*1275 APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS and DREW, JJ.
Rehearing denied.
NOTES
[1] One of Ms. Khan's co-workers, Richard Early, also retained attorneys Richey and Grubb to represent him in connection with employment discrimination claims against Southern University. The basis of Early's complaint was that he was harassed at work and wrongly denied a promotion to sergeant in retaliation for his support of Ms. Khan. Early's claims and his legal malpractice suit against Richey and Grubb are not at issue in the instant appeal.
[2] Plaintiff also submitted the affidavit of Glenn McGovern, an attorney who practices employment discrimination law in Orleans Parish, Louisiana. Because McGovern does not practice law in Shreveport or Caddo Parish, his opinions as to the applicable standards of care in that community are questionable. See Ramp v. St. Paul Fire and Marine Insurance Co., 263 La. 774, 269 So.2d 239 (1972); Herring v. Wainwright, 32,360 (La. App. 2d Cir.09/22/99), 742 So.2d 120, writ denied, 99-3065 (La.01/07/00), 752 So.2d 865.
[3] The district court's July 21, 2003, scheduling order gave Ms. Khan and Southern University until August 27, 2003, to amend their pleadings.