**Ambrose DAIGLE, Plaintiff-Appellant,**

v.

**GULF STATE UTILITIES CO., LOCAL UNION NUMBER 2286, et al., Defendants-Appellees.**

No. 85–2345.

United States Court of Appeals, Fifth Circuit.

July 18, 1986.

Lester R. Buzbee, III, Houston, Tex., for plaintiff-appellant.

Robert J. Hambright, Orgain, Bell & Tucker, James W. Hambright, William E. Heaner, Jr., Beaumont, Tex., for defendants-appellees.

Martin Dies, Orange, Tex., for Intern. Broth.

Susan F. Eley, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for Texas Employment Comm.

Before WILLIAMS, GARWOOD and JONES, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Ambrose Daigle filed various claims relating to his termination from his employment. He sued his employer for breach of contract under § 301 of the Labor-Management Relations Act of 1947 (LMRA) and his union for breach of the duty of fair representation. In addition, he complained that his employer, his union, and certain persons conspired against him in violation of 42 U.S.C. §§ 1981 and 1985. Finally, he brought a state law claim for unemployment compensation benefits. We affirm the trial court's decision dismissing the civil rights conspiracy claims, the state law claim, and the fair representation claim, but reverse for further proceedings the dismissal of the § 301 claim against the employer.

## I. FACTS

The appellant, Ambrose Daigle, was discharged on October 12, 1982, from Gulf State Utilities Company (GSU) for violating a company work rule. At the time of his discharge, appellant was a member of a collective bargaining unit of GSU employees who were represented by the International Brotherhood of Electrical Workers, Local 2286 (IBEW). He applied to the IBEW and the National Labor Relations Board (NLRB) for assistance. After an investigation, IBEW decided not to file a grievance on the appellant's behalf and notified him of this decision by a letter dated November 19, 1982. On November 17, 1982, the NLRB notified the appellant that it refused to issue a complaint, and the final appeal from this decision was denied on May 23, 1983.

The appellant applied to the Texas Employment Commission (TEC) for unemployment benefits. The TEC ruled that appellant was ineligible for benefits under Tex. Rev.Civ.Stat.Ann. art. 5221b–3(b) because he was discharged for misconduct.

The appellant filed suit on August 8, 1983. His complaint consisted of two counts. In Count One, he alleged (1) GSU

breached the collective bargaining agreement and IBEW breached its implied statutory duty of fair representation; and (2) GSU, IBEW, Larry Wenzel and Jimmy Smith (appellant's supervisors) engaged in a conspiracy to deprive him of his right to work pursuant Tex.Rev.Civ.Stat.Ann. art § 5207a and also in violation of 42 U.S.C. §§ 1981 and 1985 because appellant was "not a member of [IBEW] and in 1975 [he] continued to work while [IBEW] was on strike against [GSU]". Besides allegedly conspiring to have the appellant fired, the defendants also allegedly submitted false affidavits and testimony to the NLRB and TEC in furtherance of the conspiracy. In essence, the appellant alleges his discharge and his failure to obtain relief from the NLRB, TEC, and union occurred because he was a "scab". In Count Two of his complaint, appellant sought judicial review under Tex.Rev.Civ.Stat.Ann. art. 5221b–4(i) of the TEC's decision denying his claim for unemployment benefits.

All defendants under both counts of the complaint filed motions to dismiss. Defendants GSU and IBEW based their motion on the pleadings under Fed.R.Civ.P. 12(c). Defendant TEC based its motion on lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). At the hearing on the motions to dismiss the parties stipulated that "racial discrimination plays no part in this case" and that IBEW's decision not to file a grievance was communicated to the appellant on November 19, 1982, more than six months before he filed suit. Both counts of the appellant's claim as against all appellees were dismissed. The magistrate [1] dismissed the breach of contract and fair representation claims as time-barred under *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The civil rights conspiracy claims were dismissed on the ground that a "scab" is not a protected class under §§ 1981 and 1985. The magistrate dismissed the unemployment benefit suit as barred by Eleventh Amendment state immunity from suit in federal court, and al-

---

1. The parties consented to a magistrate presiding over their case. 28 U.S.C. § 636(c).

ternatively held that it would be inappropriate to hear the case when the federal claims had been dismissed. Daigle appeals.

## II. § 301 BREACH OF CONTRACT AND FAIR REPRESENTATION CLAIMS

We must characterize the appellant's breach of contract and duty of fair representation claims to determine the applicable statute of limitations. GSU and IBEW argue that appellant's suit is a classic hybrid § 301 claim of employer breach of contract and union breach of the duty of fair representation. As such, they urge, it is barred by the well-established National Labor Relations Act's six–month statute of limitations. Appellant argues that his claim is a straightforward breach of contract claim governed by the Texas statute of limitations of four years for contract actions. *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

A § 301 breach of contract and fair representation suit comprises two distinct causes of action, one against the employer, and the other against the union. Section 301 of the LMRA, 29 U.S.C. § 185, provides an employee with a federal cause of action against his employer for breach of the collective bargaining agreement. The suit against the union for breach of the duty of fair representation is implied under the scheme of the National Labor Relations Act. *DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2290. The two causes of action are "inextricably interdependent", and have come to be known as a hybrid § 301/duty of fair representation suit. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). The interdependency arises from the nature of the collective bargaining agreement. If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580

(1965). Further, he is bound by the procedure's result unless he proves the union breached its duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Thus, the "indispensable predicate" for a § 301 action in this situation is a fair representation claim against the union. *Mitchell*, 451 U.S. at 62, 101 S.Ct. at 1564. As the Supreme Court stated in *DelCostello:*

> To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

462 U.S. at 166, 103 S.Ct. at 2291 (citations omitted). In essence the hybrid § 301/fair representation suit is brought "in order to set aside a final and binding determination of a grievance, arrived at through the collectively bargained method of resolving grievance. It is, therefore, a direct challenge to the private settlement of disputes under the collective bargaining agreement." *Mitchell*, 451 U.S. at 67, 101 S.Ct. at 1566 (Stewart, J., concurring); *DelCostello*, 462 U.S. at 166, 103 S.Ct. at 2291.

On the other hand, if the collective bargaining agreement does not provide that the grievance and arbitration procedure is the exclusive and final remedy for breach of contract claims, the employee may sue his employer in federal court under § 301, *Vaca v. Sipes*, 386 U.S. 171, 183, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967), and the state statute of limitations applicable to contract breaches applies. *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. at 704, 86 S.Ct. at 1113; *Smith v. Kerrville Bus Co.*, 748 F.2d 1049 (5th Cir. 1984). In such an instance, a fair representation suit against the union would still be governed by the *DelCostello* six-month statute of limitations. *See DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2292 (rejecting

state limitations period for legal malpractice for fair representation claim against the union because "application of a longer malpractice statute would preclude the relatively rapid solution of labor disputes favored by federal law."); *accord Mitchell,* 451 U.S. at 64, 101 S.Ct. at 1564.

Consequently, appellant's claim against the union is barred in any event by the six month statute of limitations since he filed suit more than six months after the union notified him of its decision not to file a grievance, the date the limitations period began to run. *Hersh v. Allen Products Co., Inc.,* 789 F.2d 230, 232 (3d Cir.1986); *see, Metz v. Tootsie Roll Industries,* 715 F.2d 299, 304 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984), *citing, Hungerford v. United States,* 307 F.2d 99, 102 (9th Cir.1962). We are unable to dispose of appellant's § 301 claim, however, because the record before us does not include the collective bargaining agreement and nothing in the record tells us if it requires an aggrieved employee first to seek remedy through the grievance and arbitration procedure. We must therefore remand for the trial court to apply the parties' collective bargaining agreement. If the contract contains the typical provision that aggrieved parties must go through the grievance and arbitration procedures and the procedures' resolution is final and binding on the parties, appellant's suit against both employer and union is barred. For as we pointed out above, appellant's § 301 suit would then hinge on the claim that the union breached its duty of fair representation, a claim the appellant is barred from bringing. Thus, he cannot bring a separate breach of contract suit with a separate statute of limitations applicable. *DelCostello,* 462 U.S. at 159 n. 12, 103 S.Ct. 2287 n. 12. Only if the arbitration and grievance procedures in the contract are alternative procedures, leaving the aggrieved employee and the exclusive bargaining representative free to use or not use them as they wish does the state statute of limitations for breach of contract apply to appellant's § 301 suit.

## III.  CIVIL RIGHTS CLAIMS

### A.  *Section 1985(3) Claim*

Section 1985(3) prohibits private conspiracies to deprive persons of equal protection of the laws.[2] The issue is whether the appellant satisfied § 1985(3)'s requirement that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The magistrate reasoned that the appellant's claim under § 1985(3) was foreclosed by *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). In *Scott,* A.A. Cross Construction Co., Inc. (Cross), a business that hired workers without regard to union membership, operated in a self-professed union town. The local union employees resented Cross's hiring practices. The friction between the local union workers and the employees of the company culminated in a brutal attack of Cross's employees at the company's work site. Cross and two employees sued the various unions whose members were allegedly responsible for the attack under § 1985(3). The Supreme Court held that an alleged conspiracy to infringe a claimed First Amendment right to associate with fellow non-union employees is not a violation of § 1985(3) without proof of state involvement, 463 U.S. at 831, 103 S.Ct. at 3357, and, in any event, conspiracies motivated by economic or commercial animus are not within the scope of § 1985(3). 463 U.S. at 839, 103 at 3361.

Appellant seeks to distinguish his case from *Scott* by arguing that the defendants deprived him not of his First Amendment right of association but of his "right to

---

2. Section 1985(3) provides in pertinent part:
   If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

work" pursuant to Texas law. Tex.Rev. Civ.Stat.Ann. art. 5207a. Second, he alleges that the defendants were motivated to conspire against him because he was a "scab" and not solely because he was a nonunion worker.

█ Following the Supreme Court's analysis, 463 U.S. at 835, 103 S.Ct. at 3359, we need not consider whether the appellant could state a cause of action under § 1985(3) for deprivation of a right under state law because appellant does not satisfy *Griffin's* class-based animus requirement. Section 1985(3) does not cover "conspiracies motivated by bias towards others on account of their *economic* views, status, or activities." *Scott,* 463 U.S. at 838, 103 S.Ct. at 3361 (emphasis in original). The appellant focuses on a very narrow and inconsequential factual difference between his case and *Scott.* The fact that appellant alleges he was discriminated against because he was a "scab" rather than a nonunion worker does not remove him from the stricture of this holding. Essentially, appellant is simply stating that the defendants were biased toward him because of his economic activity, and thus his § 1985(3) claim is without merit.

### B. *Section 1985(2)*

█ Appellant alleges the defendants conspired to obstruct justice in violation of § 1985(2) by submitting false affidavits and testimony to the NLRB and TEC. The first part of § 1985(2) proscribes conspiracies that interfere with the administration of justice in federal court,[3] and the second part proscribes conspiracies that interfere with the administration of justice in state court.[4] *Kush v. Rutledge,* 460 U.S. 719, 725, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). Appellant fails to state a claim under either part of § 1985(2).

Like § 1985(3), the second part of § 1985(2) is directed at conspiracies to deprive equal protection; the equal protection language in § 1985(2) is paralleled in § 1985(3). Thus, we have held that the *Griffin* race of class-based animus requirement of § 1985(3) also applies to claims under the second part of § 1985(2). *Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 346 (en banc), *cert. denied,* 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981).[5] As discussed above, the appellant does not meet the class-based animus requirement so he is foreclosed from stating a claim under the second part of § 1985(2).

Appellant also does not state a claim under the first part of § 1985(2). Although the first part of § 1985(2) does not require race or class-based animus, *Kush v. Rutledge,* 460 U.S. at 727, 103 S.Ct. at 1488, it does require that there has been an interference with the *federal* court system. *Seeley v. Brotherhood of Painters, Decorators & Paper Hangers of America,* 308

**3.** The first portion of 1985(2) provides:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror;

**4.** The section portion of § 1985(2) provides:

[O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**5.** The Eighth, Ninth, Seventh, Second, Third, and First Circuits have also held that the equal protection language of the second clause of § 1985(2) requires race or class-based animus. *Harrison v. Springdale Water & Sewer Commission,* 780 F.2d 1422, 1430 (8th Cir.1986); *Bretz v. Kelman,* 773 F.2d 1026, 1030, (9th Cir.1985); *Williams v. St. Joseph Hospital,* 629 F.2d 448, 451 (7th Cir.1980); *Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir.), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2238, 56 L.Ed.2d 405 (1978); *Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir.1976); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

F.2d 52, 58 (5th Cir.1962); *see, Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). The appellant's allegations of interference with the NLRB and TEC clearly do not fall within the confines of § 1985(2).

### C. *Section 1981*

■ The appellant also contends that the defendants violated § 1981 by discriminating against him because he was a "scab".[6] He argues that § 1981 is not limited to racial discrimination. He relies upon *Guerra v. Manchester Terminal Corp.,* 498 F.2d 641 (5th Cir.1974) for the proposition that § 1981 is available to "all persons".

But *Guerra* does not support appellant's claim. *Guerra* held that § 1981 was applicable to aliens. In *Bobo v. ITT, Continental Baking Co.,* 662 F.2d 340 (5th Cir. 1981), *cert. denied,* 456 U.S. 933, 102 S.Ct. 1985, 72 L.Ed.2d 451 (1982), the plaintiff there similarly argued that *Guerra* supported a broad reading of § 1981 to include sex discrimination. We held that § 1981 did not protect against sex discrimination, characterizing *Guerra* as a case with "strong racial overtones." 622 F.2d at 344. As mentioned earlier, the parties had stipulated that there was no racial discrimination issue in this case. In no event can *Guerra* support the proposition that § 1981 protects persons discriminated against on the basis of their economic views.

### IV. UNEMPLOYMENT BENEFITS CLAIM

■ Appellant seeks to bring his claim against the TEC for unemployment benefits in federal court arguing that we have pendent jurisdiction. Even assuming there is pendent jurisdiction, pendent jurisdiction may not override the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). The Eleventh Amendment prohibits a private citizen from bringing suit against a state in federal court unless the state consents. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The suit against the TEC is a suit against the state since the TEC is an agency of the state of Texas. *Vick v. Texas Employment Commission,* 514 F.2d 734, 737 (5th Cir.1975). The appellant's claim is thus barred by the Eleventh Amendment unless Texas has waived its sovereign immunity. There is no indication that the state has done so. The Texas unemployment compensation scheme provides for judicial review of the TEC's decisions in its courts.[7] Tex.Rev.Civ.Stat.Ann. art. 5221b–4(i); *see, Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 465, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945) (construing statutory language similar to art. 5221b–4(i) as a waiver of immunity from suit in state court only). But as the Supreme Court pointed out in *Pennhurst,* a state's consent to be used in its own courts does not constitute consent to such a suit in federal court. *Pennhurst,* 465 U.S. 89 n. 9, 104 S.Ct. at 907 n. 9. In short, there is nothing to indicate that Texas has waived its immunity from suit in federal court, and the appellant's claim is barred.

**6.** Section 1981 provides:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**7.** Tex.Rev.Civ.Stat.Ann. art. 5221b–4(i) provides in pertinent part:
Within ten (10) days after the decision of the Commission has become final, and not be-

fore, any party aggrieved thereby may secure judicial review thereof by commencing an action in any court of competent jurisdiction in the county of claimant's residence against the Commission for the review of its decision, in which action any other party to the proceeding before the Commission shall be made a defendant, provided that if a claimant is a non-resident of the State of Texas such action may be filed in a court of competent jurisdiction in Travis County, Texas, or in the county in Texas in which the last employer has his principal place of business, or in the county of claimant's last residence in Texas.

## V. CONCLUSION

Appellant has undertaken to broaden a routine industrial discharge claim into major constitutional and statutory civil rights claims. He does not allege facts which can substantiate such claims. He may or may not have a breach of contract claim under § 301 not barred by limitation, but only if the collective bargaining agreement under which he worked lacks provision for the exclusiveness of the contract grievance remedy. We remand to the district court to resolve this issue through interpretation of the collective bargaining agreement.

AFFIRMED IN PART, REVERSED IN PART.