Albert WILLIAMS and Calvin
Williams, Plaintiffs,

v.

SIMMONS COMPANY,
et al., Defendants.

No. CIV.A. 3:99–CV–2964–P.

United States District Court,
N.D. Texas,
Dallas Division.

May 22, 2001.

George D. Thomas, Attorney at Law, Law Office of George D. Thomas, Dallas, TX, for plaintiffs.

William E. Hartsfield, Attorney at Law, Hamilton & Hartsfield, Dallas, TX, Timothy R. Newton, Attorney at Law, Frank B. Shuster, Attorney at Law, Constangy Brooks & Smith, Atlanta, GA, Bruce A. Fickman, Attorney at Law, Law Office of Bruce A. Fickman, Houston, TX, for defendants.

### *MEMORANDUM OPINION AND ORDER*

SOLIS, District Judge.

Now before the Court is Plaintiffs' Motion to For Leave to Amend, filed December 12, 2000; and Defendants' Response, filed January 2, 2001 (Plaintiff filed no Reply); Defendant Simmons Company's ("Simmons") Motion for Summary Judgment, filed February 20, 2001; Defendants USWA, District 12, and Local 422's ("the

Union") Motion for Summary Judgment, also filed February 20, 2001; Plaintiffs' Response to Defendants' Motions for Summary Judgment, filed March 19, 2001; Defendant Simmons' Reply in Support of its Motion for Summary Judgment, filed April 3, 2001; and Defendant Union's Reply in Support of its Motion for Summary Judgment, also filed April 3, 2001. Upon due consideration, the Motion for Leave to Amend is DENIED and the Motions for Summary Judgment are GRANTED.

## I. BACKGROUND

Albert Williams was a 61 year old African American who had worked for Simmons for over 34 years; Calvin Williams was a 43 year old African American who worked at Simmons for over 22 years. Pl's App. p. 15, 90. Both were members of the United Steelworkers of America union. *Id.* Both worked as "hogringers," whose job was to place borders around the outside of mattresses. Simmons' App. p. 21–23, 259.

In November 1998, Simmons instituted the Pay Plus Bonus Program ("the Program") as a new method of payment of its employees, which was incorporated into the Collective Bargaining Agreement ("CBA"). Simmons' App. p. 30–32, 89, 203–04, 260. The collective bargaining agreement to which Plaintiffs were subject has a grievance/arbitration procedure that calls for the remedy of arbitration; the parties do not dispute that the arbitration is final and binding. Simmons' App. p. 275–78. After the implementation of the Program, the efficiency of Plaintiffs dropped. Plaintiffs contend the drop in efficiency was an artifact of Simmons' new measuring system and higher expectations; Defendants fault Plaintiffs for reducing their productivity.

Simmons instituted progressive discipline against Plaintiffs and several other hogringers consisting of verbal and written warnings and suspensions, and indicated that failure to meet production levels would result in termination. Simmons' App. p. 37–39, 47–48, 90–91, 93, 96–97, 122, 124, 190, 185, 262, 332–44. While most of the other hogringers subsequently improved their performance to meet production levels under the new standards, Plaintiffs failed to do so and were fired on April 9, 1999. Simmons' App. p. 48–49, 99–100, 125, 192–93, 263.

Plaintiffs complained that the production standards were too harsh to be met. After Plaintiffs were terminated and while their grievances were pending, the Union requested a time study, which revealed that the standards were appropriate and consistent with other Simmons plants. Simmons' App. p. 346–62. According to union representative Thomas, the conductor of the study informed him that Plaintiffs' grievances were thus without merit, but that "Last Chance Agreements" might be negotiated for Plaintiffs. Simmons' App. p. 347. Believing that the Union could not prevail at arbitration, Thomas decided not to arbitrate the case, but rather to negotiate a Last Chance Agreement with Simmons, which reinstated Plaintiffs in their former positions, without back pay, on a probationary period requiring satisfactory production levels for 15 out of 20 days. Simmons' App. p. 347–48. Failure to meet these production levels would result in Plaintiffs' termination without recourse to contractual grievance and arbitration procedures. Simmons' App. p. 348. Plaintiffs failed to adequately meet those production levels. Simmons' App. p. 131–40, 264, 365–74. Simmons fired Plaintiffs again on June 4, 1999. Simmons subsequently rejected the grievances filed by the Union on the basis that the right to file grievances was waived by the Last Chance Agreement. Simmons' App. p. 349.

Rudy Garza replaced Thomas as union representative. Simmons' App. p. 348. Garza allegedly treated Plaintiffs rudely and failed to return their telephone calls. Pl's App. p. 151–52.

Plaintiffs sue under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging a breach of the duty of fair representation by Defendants United Steelworkers of America, AFL–CIO, CLC ("the International Union"), District 12, and Local 422 of the United Steelworkers of America, AFL–CIO, CLC ("Local 422") (together, "the Union"), and alleging a breach of the CBA by Defendant Simmons Company ("Simmons"). Plaintiffs also sue Simmons for race and age discrimination, presumably under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994) *et seq.*, as amended, the Age Discrimination in Employment Act, 29 U.S.C. § 621 (1999) *et seq.*, the Texas Commission on Human Rights Act, Tex. Labor Code § 21.001 (1996) *et seq.*, and 42 U.S.C. § 1981 (1994).

## II. MOTION FOR LEAVE TO AMEND COMPLAINT

The Complaint in this matter was filed November 19, 1999. The deadline for the parties to file motions for leave to amend pleadings was June 29, 2000. The Court's Revised Scheduling Order set a deadline for discovery of October 2, 2000. The Court subsequently agreed to extend the discovery period through November 2, 2000 and also reset the dispositive motions deadline to January 2, 2001. On November 2, 2000, the last day of discovery, Plaintiffs served the Defendants with their supplemental discovery responses, identifying additional witnesses and providing affidavits from three of those witnesses. Plaintiffs' counsel was not made aware of the identity of two of the affiants, and was unable to locate one of the affiants until after June 29, 2000. Discovery was extended until December 21, 2000 to allow Defendants to depose the new affiants.

Plaintiffs now seek to amend the Complaint. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading "shall freely be granted when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The decision to grant leave to amend lies within the discretion of the trial court. However, the policy behind the Rules to grant liberal amendment to pleadings limits the court's discretion. *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir.1981). Thus, unless there exists a substantial reason for denying leave to amend, the district court should permit the filing of a proposed amendment. *Id.* Nevertheless, the parties' ability to amend their pleadings is by no means unlimited. *See In re Southmark,* 88 F.3d 311, 315 (5th Cir.1996); *In re Circuit Breaker Litigation,* 175 F.R.D. 547 (C.D.Cal.1997). In determining whether to grant leave to amend, the court may consider several factors, including undue delay or prejudice to the non-movant, bad faith or dilatory motives on the part of the movant, repeated failure to cure deficiencies, and futility of amendment. *Foman,* 371 U.S. at 182, 83 S.Ct. 227. "In exercising its discretion to deny leave to amend a complaint, a trial court may properly consider (1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Southmark,* 88 F.3d at 316.

Plaintiffs claim that their claims for relief have not changed, and that the Original Complaint and the proposed First Amended Complaint are virtually identical except for the Factual Background section. Setting aside any possible deletions, the

Court notes additional material contained in paragraphs 15 and 16 of the Amended Complaint. Defendants object to the assertion in paragraph 15 that Defendant Simmons "misled" them prior to the implementation of the Pay Plus Bonus Program ("Program") by promising employees that no employee would be fired for failing to meet productions levels. Defendants interpret this allegation as a new claim that Plaintiffs were thus deceived into voting for the implementation of the Program.

It is evident to the Court, and not disputed by Plaintiffs, that Plaintiffs knew of this alleged deception and any failure by the Union to respond to it as of January of 1999, when they were given warnings for failing to meet production levels, and informed that such failure could result in their termination. *See* proposed First Amended Complaint ¶ 16 ("After the implementation of the Pay Plus Bonus Program, employees received warnings and were subjected to the disciplinary procedure if they failed to meet production levels .... The Union and Simmons did not follow the labor agreement with regards to these grievances."); Employee Warning Notice, Defs' App. p. 9 (written warning to Calvin Williams). Defendants also represent that the deposition of local union president Jack Wiles provides that Calvin Williams was one of the union officials involved in negotiating the program, and thus C. Williams allegedly heard the representation that employees would not be fired for not achieving production levels. Plaintiffs were later terminated for insufficient production levels on April 9, 1999 (proposed First Amended Complaint ¶ 17). Plaintiffs filed the motion for leave to amend approximately 20 months after they were told they were fired for failing to meet production levels, more than a year after filing their Original Petition, and five months after the Court's deadline for amending pleadings.

Plaintiffs do not adequately explain why the addition to their complaint could not have been accomplished much earlier based on Plaintiffs' existing knowledge. There is no showing by Plaintiffs which affiant contributed to the new statements in the proposed Amended Complaint. The allegation—that Plaintiffs relied on a representation from Simmons that they would not be fired—would appear to be an easily discoverable fact, the kind that would surface in an initial client interview. The Court sees no reason that the fact could not have been included in the Complaint earlier. Indeed, as Defendants point out, it does not matter when Plaintiffs' counsel learned of such facts, but when Plaintiffs did. The Court has already extended deadlines to accommodate disclosures by Plaintiffs. Such changes do not obviate the need to avoid piecemeal litigation. The Court also notes that Plaintiffs' untimely filing of a jury demand resulted in the demand being stricken, evincing a pattern of not adhering to deadlines in this case.

It further appears to the Court that amendment of Plaintiffs' complaint to include a new claim of breach would be futile. In a "hybrid" claim such as Plaintiffs', which combines a claim for the employer's breach of the collective bargaining agreement (CBA) with a claim for the union's breach of the duty of fair representation, a six-month statute of limitations applies under § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1998). *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 154–55, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Wood v. Houston Belt & Terminal Railway*, 958 F.2d 95, 97 (5th Cir.1992). The statute of limitations begins to run when the employee knows or should know that the collective bargaining agreement has

been breached. *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989). Since Plaintiffs' new claim is apparently that they were misled into voting for the Program, then Plaintiffs would know of this breach at the latest when they were fired in April of 1999 for violating the Program's standards. The statute of limitations on that claim thus began to run no later than April 1999. Plaintiffs' amended complaint was thus filed outside the statute of limitations. It would thus appear that such claim would be futile even if Plaintiffs claimed the amendment related back to the original petition under Fed.R.Civ.P. 15(c), though neither party discusses this point of law. Amendment of Plaintiffs complaint would be futile.

Since Plaintiffs contend that the First Amended Complaint alleges no new claims, the Court sees no obvious prejudice in denying leave to file it. Conversely, a motion by Defendants to again reopen the discovery period would again delay the case. Plaintiffs' Motion for Leave to Amend is DENIED.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary Judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The moving party bears the burden of informing the

district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248–50, 106 S.Ct. 2505; *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir.1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

Finally, the Court has no duty to search the record for triable issues. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir.1992). The Court need only rely on the portions of submitted documents to which the nonmoving party directs. *Id.*

## B. Discussion

A § 301 breach of contract and fair representation suit comprises two distinct causes of action, one against the employer, and the other against the union. *Daigle v. Gulf State Utilities Co., Local Union No. 2286*, 794 F.2d 974, 977 (5th Cir.1986). Section 301 of the Labor Management Relations Act ("LMRA") provides an employee with a federal cause of action against his employer for breach of their collective bargaining agreement. 29 U.S.C.A. § 185(a) (West 1998). The suit against the union for breach of the duty of fair representation is implied under the scheme of the National Labor Relations Act. *Daigle*, 794 F.2d at 977 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)). The two causes of action are "inextricably interdependent," and have come to be known as a "hybrid" § 301 /duty of fair representation suit. *Id.; Landry v. The Cooper/T. Smith Stevedoring Co., Inc.*, 880 F.2d 846, 850–51 (5th Cir.1989).

▇▇▇ The interdependency arises from the nature of the collective bargaining agreement. If the arbitration and grievance procedure is the exclusive and final remedy for breach of the collective bargaining agreement, the employee may not sue his employer under § 301 until he has exhausted the procedure. *Daigle*, 794 F.2d at 977. Further, the employee is bound by the procedure's result unless he proves the union breached its duty of fair representation. *Id.* Thus, the "indispensable predicate" for a § 301 action in this situation is a fair representation claim against the union. *Id.* As the Supreme Court stated in *DelCostello*:

> To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their [unfavorable employment action] was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

*DelCostello*, 462 U.S. at 166, 103 S.Ct. 2281, *quoted in Daigle*, 794 F.2d at 977.

▇▇▇ In other words, where a collective bargaining agreement provides that the grievance and arbitration procedure is the exclusive and final remedy, the employee must prove (1) that the union breached its duty of fair representation and (2) that the employer breached the collective bargaining agreement. *Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328, 1337–38 (S.D.Tex.1987). Further, when an employee is required to exhaust the grievance procedure, a claim for breach of the collective bargaining agreement filed following the grievance determination will necessarily include a claim against the union for breach of the duty of fair representation. *Id.*

### 1. Claim Against the Union for Breach of Duty of Fair Representation

▇▇▇ A union breaches its duty of fair representation only if its conduct is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991). A union's actions are "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Id.*

In this case, there is no dispute that the collective bargaining agreement covering Plaintiffs' employment included a grievance procedure that was the exclusive remedy against Simmons. As stated above, before Plaintiffs can pursue a cause of action against Defendant Simmons,

Plaintiffs must show that the Union breached its duty of fair representation. Plaintiffs raise four arguments in support of their duty of fair representation claims against the Union. First, Plaintiffs assert the Union breached its duty by not taking the initial grievances to arbitration. More generally, Plaintiffs contend that the Union acted arbitrarily in its attention to the grievances filed. Second, Plaintiffs assert that the Union breached its duty by not discussing with Plaintiffs the settlement terms the Union had reached with Simmons. Third, Plaintiffs disagree with the terms of the settlement. Fourth, Plaintiffs challenge the decision not to pursue the second grievance to arbitration. After full review of the summary judgment evidence and applicable law, the Court finds that Plaintiffs have not stated a genuine issue of material fact as to whether the Union breached its duty of fair representation. The Court will address each of Plaintiff's arguments below.

 i. Plaintiffs argue that the Union Defendants breached the duty of fair representation by not bringing their grievances to arbitration. The Court notes that the duty of fair representation does not require the Union to arbitrate every grievance. Instead, a union breaches its duty when its conduct is arbitrary, discriminatory, or in bad faith. *Air Line Pilots Ass'n Int'l,* 499 U.S. at 67, 111 S.Ct. at 1130. Unions retain considerable discretion when processing grievances. *Landry,* 880 F.2d at 854. As such, an employee has no absolute right to have his or her grievance arbitrated. *Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

 Plaintiffs argue more generally that Defendants' pursuit of Plaintiffs' grievances was perfunctory and therefore arbitrary. *Vaca,* 386 U.S. at 191, 87 S.Ct. 903 (union may not arbitrarily ignore a meritorious grievance or process it perfunctorily). *See also Lowe v. Pate Stevedoring Co.,* 558 F.2d 769, 771 n. 2 (5th Cir.1977). The union must investigate the merit of the employees' grievance in good faith. *Abilene Sheet Metal, Inc. v. NLRB,* 619 F.2d 332, 347 (5th Cir.1980). Simple negligence or a mistake in judgment will not support a claim of breach against the Union Defendants. *Landry,* 880 F.2d at 852.

The Union pursued Plaintiffs' suggestion that Simmons' new standards were unfair by requesting the reevaluation of the standards themselves. The examiner found the standards to be accurate and in line with standards in other Simmons plants. Whether or not the production standards were indeed fair to Plaintiffs does not detract from the Union's diligence in investigating the standards' propriety. It is not disputed that union officials Thomas and Dankert considered whether to arbitrate this claim. Union App. p. 148, 65. Thomas believed that the Union could very likely lose if it brought Plaintiffs' claims to arbitration. Simmons' App. p. 347–48. Realizing their weak bargaining position, the Union instead decided to negotiate a deal for Plaintiffs without going to arbitration. Such actions cannot be said to be outside the wide range of reasonableness afforded to the Union.

 Nor is there is a genuine issue of material fact as to whether the Union Defendants ever considered Plaintiffs' complaint that Plaintiffs should not be disciplined or fired for a failure to meet production standards, but should instead be permitted to move to another available job within the company. Plaintiffs appeared ready to concede in their grievances that they were not meeting the new production standards; the relevant question was how the company should respond to this deficiency. Plaintiffs con-

tend that the Union should have fought to move Plaintiffs to another job rather than conceding that termination could be appropriate for substandard performance. Thomas evidently never saw the grievances at issue and was unaware of this aspect of Plaintiffs' complaint. Pl's App. p. 229, 232–37. Thomas did not know whether before the Program anyone had been fired for failing to meet production levels. Pl's App. p. 230–31. Plaintiffs point out a change in management structure within the Union and the possible breakdown in communication resulting in Thomas not being informed of part of Plaintiffs' grievances. But there is no evidence that other Union officials who communicated with Thomas did not consider Plaintiffs' claims. Further, the Court is unwilling to infer a breach by the Union for not pursuing a claim that arguably had no merit. At this juncture, the Court will consider the viability of such a claim under the Union's collective bargaining agreement for the purpose of determining if the Union acted arbitrarily in not pursuing this aspect of Plaintiffs' grievances or within the "wide range of reasonableness" by which their actions are judged. The Court assumes that employees had under some circumstances been permitted to "bump" less senior employees at the plant in the past. Plaintiffs offer no evidence that employees who had qualified for a job in the past were ever permitted to bump others when the "bumping" employees fell below standards they had formerly achieved. Pl's App. p. 194–95; Simmons' App. p. 243–45, 256; Simmons Supp.App. p. 9–11. Further, the CBA does not appear to support Plaintiffs' claims. The provision of the CBA relied upon by Plaintiffs, § 7.15, on its face applies to rehired or transferred employees. But Plaintiffs would not appear to be rehired employees, but were instead trying to retain their jobs. Further, there is no indication that this provision applies to those who had previously qualified for a job. Simmons' App. p. 286; Pl's Resp. p. 23.

The Union would be free in its discretion to decline to pursue such a claim if it considered Plaintiffs' claim, and instead attempt to preserve Plaintiffs' jobs by giving them a last chance. A union has the discretion not to file a grievance as long as its actions are not arbitrary, capricious, or in bad faith. *See, e.g., Turner v. Air Transport Dispatchers' Ass'n*, 468 F.2d 297, 298–99 (5th Cir.1972) (union was not liable for refusal to process airline dispatcher's grievance, where union's interpretation of collective bargaining agreement as favoring domestic over foreign dispatchers was the only plausible one). Even though Thomas never saw the grievances and Thomas's phone calls to local union president Manuel Facunda were not returned, Thomas relied on oral conversations with union official Tom Dankert; Pl's App. p. 238, 240. The Court concludes that the Union did not act perfunctorily or arbitrarily so as to breach the Union's duty of fair representation.

■ **ii.** Plaintiffs contend that the Union Defendants breached their duty of fair representation by not discussing the terms of the settlement with Plaintiffs prior to their return to work. However, Plaintiffs knew of the terms of the Last Chance Agreement at least by the time they returned to work, and they continued to work. Simmons' App. p. 58, 107–08.

Plaintiffs note that they did not participate in negotiating the LCA. They contend that a LCA is not effective without the subject employee's acceptance. *U.S. Dept. of Air Force v. FLRA*, 949 F.2d 475, 481 (D.C.Cir.1991). The Court questions the application of their cited case. The decision stems from a different statute, the

Federal Service Labor–Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, which applies specifically to federal employees; Plaintiffs have not established that it applies to private employees. Under the Fifth Circuit and Supreme Court authority previously discussed, the Union has wide discretion in settling an employee's claims; there is no indication that the employee's participation or even assent is required. In any event, Plaintiffs' return to work under the conditions specified in the LCA shows at least tacit approval of the LCA.

**iii.** Plaintiffs disagree with the terms of the settlement negotiated by the Union. Any substantive examination of a union's performance must be highly deferential. *O'Neill,* 499 U.S. at 66, 111 S.Ct. 1127. Plaintiffs disagree with the decision to return them to work on a probationary basis. But Plaintiffs were only on probation as to their production levels, not as to any other aspect of their employment. Simmons' App. p. 363–65. Indeed, the Union in effect reversed the last step of the progressive disciplinary process by returning Plaintiffs to work on a probationary status. Further, it is unreasonable to infer that simply because the Union failed in its attempt to negotiate backpay that it acted in bad faith, arbitrarily, or discriminatorily. Further, it is undisputed that Plaintiffs were offered opportunities to bid on different jobs within the plant; Plaintiffs did not pursue this chance. Simmons' Supp.App. p. 29.

**iv.** Plaintiffs contend that their second grievance should have been pursued to arbitration. As stated *supra,* a union has broad latitude on whether or not to pursue a grievance. *See Vaca,* 386 U.S. at 191, 87 S.Ct. 903. Any failure by the Union to pursue Plaintiffs' privilege to bump other employees does not constitute breach of duty. Having already entered into a LCA, it would not be outside the wide range of reasonableness for the Union Defendants to expect the LCA to override the CBA, precluding the filing of grievances. *See Int'l Union of Operating Eng'rs v. Cooper Natural,* 163 F.3d 916, 919 (5th Cir.1999) (stating that "[s]ince LCAs follow collective bargaining agreements in time, they should be construed as superseding a CBA in certain circumstances because an LCA reflects the parties' own construction of the CBA.").

The Court now considers Plaintiffs' evidence that they were misled by their Union representative or Simmons before the implementation of the Pay Plus Bonus Program to believe that no one would be fired for failing to attain minimum production levels. A claim that Plaintiffs were falsely induced to support the new program does not appear in the Original Petition; the Court has refused to permit such claim to be pursued. Plaintiffs state that such evidence is not a new claim; however, it carries little relevance even as evidence of the Union's (or Simmons') misfeasance in the claims that Plaintiffs have brought to this Court. Plaintiffs' claims against the Union involve the handling of their grievances, not the implementation of the Pay Plus Bonus Program. At most, such evidence might indicate error in judgment by the Union. Even supposing the Union deliberately misled Plaintiffs into supporting the Program, Plaintiffs became aware that they could be fired once they were disciplined by Simmons, thus limiting the effects of any misleading statements. The Plaintiffs further contended in the Original Petition, page 6 that they were informed by their union representative that if they returned to work after Simmons initially dismissed them, they would not be fired again for not achieving their minimum production levels. However, the allegation

does not appear supported by the evidence.

Lastly, any hostility by union representative Rudy Garza appears mild, and will not support a claim for breach of duty. Pl's App. p. 151–52. Nor does Garza's refusal to pursue A. Williams' second grievance or return his telephone call sustain a claim. Pl's App. p. 151–52, 168. As previously discussed, the Union reasonably believed it was precluded from pursuing the grievance by the LCA. No reasonable factfinder could conclude that the Union breached its duty of fair representation to Plaintiffs. Because Plaintiffs must establish breach by both the Union and Simmons, the Court GRANTS summary judgment on the hybrid claim of breach of duty of fair representation / breach of collective bargaining agreement.

**2. Claim Against Simmons for Breach of the Collective Bargaining Agreement**

■ Plaintiffs claim that § 3.01 of the CBA prevents Simmons from entering into the LCA without consulting Plaintiffs. Plaintiffs provide scant argument or explanation for this assertion. The only portion that arguably applies to Plaintiffs' case is Section 3.01(C), which provides that "[t]he aggrieved employee may discuss the matter with the employee's immediate supervisor and Union representative if requested." Simmons' App. p. 276. Plaintiffs have not shown that such a request was made, let alone went unanswered. Further, this section does not on its face require Plaintiffs' consent prior to agreeing to a LCA. The Management Rights Clause of Article VI reserves all management rights not covered by the agreement to the Union. Simmons' App. p. 281. Since the right to consummate a LCA is not covered by the CBA, the right is reserved to Simmons. Plaintiffs knew of the terms of the LCA at least as early as when they returned to work; nothing cited by Plaintiffs

mandates that they be consulted any sooner. Simmons' App. p. 55–58, 104–108, 195.

■ Firing Plaintiffs instead of laying them off after they failed to meet production standards under the LCA does not violate the CBA. As discussed above, the LCA superseded the CBA, as there is no genuine issue raised that the parties intended the LCA to govern Plaintiffs' continuing employment. *See Cooper Natural*, 163 F.3d at 919. If the LCA and CBA are inconsistent as to whether Plaintiffs' could be fired, the LCA trumps the CBA. *See id.* Since the LCA provided that Plaintiffs could be fired directly for not meeting standards, there is no violation of the CBA in firing them for their failure. The LCA reflected the parties' understanding that § 7.15 governing "rehires" did not apply to Plaintiffs. Further, the Court sees no violation of the CBA's Appendix A or § 2.04 listing serious offenses and permitting the correction of offenses. Simmons' App. p. 275, 315. "Poor quality" is listed as a serious offense, and regardless, the Appendix contains mostly hortatory language that would not appear to mandate different treatment for Plaintiffs.

■ "Just cause" is a real cause for a reasonable employer to dismiss an employee in good faith, rather than an arbitrary whim or caprice. *See Lampkin v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, 154 F.3d 1136, 1143 (10th Cir.1998). Law from the Eighth Circuit finds that a LCA overrides a CBA, making a just cause inquiry irrelevant and inappropriate. *Coca–Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1440–41 (8th Cir.1992). Even assuming the inquiry is relevant, there is no genuine issue of material fact that Simmons had just cause to fire Plaintiffs for failing to meet production levels of 100% efficiency. Simmons' App. p. 264;

Simmons' Supp.App. p. 4–5. There is no evidence other than Plaintiffs' assertions to contradict the fact that Simmons measured productivity the same way before and after the Program began, by comparing the pieces produced with the standard amount of time that is required to produce the piece. *Id. See also* Simmons App. p. 27–28, 260. Plaintiffs assert in affidavits accompanying their Response that the method for calculating efficiencies changed, dramatically increasing their required output. Pl's App. p. 16–17, 91–92. These assertions are to be given no weight, for they contradict Plaintiffs' earlier depositions, serving only as sham affidavits to stave off summary judgment. Pl's App. p. 113, Simmons' App. p. 84–85, 108–110; *Doe v. Grossman,* 2000 WL 1400626 (N.D.Tex.2000), *citing Radobenko v. Automated Equipment Corp.,* 520 F.2d 540, 544 (9th Cir.1975); *Bennett v. CompUSA,* 1997 WL 10028 (N.D.Tex.1997). There is anecdotal evidence that many workers, including at other plants, suddenly did not achieve production levels after implementation of the Program. Pl's App. p. 192–93. But despite initial failure, most hogringers began to again reach 100% efficiency, while Plaintiffs did not. After instituting progressive discipline, the company only required hogringers to produce at 100% efficiency, lower than before the Program. Simmons' App. p. 262, 264. The Union's own expert found the efficiency standards to be appropriate. The Court will not consider whether Jerry Jackson should have been terminated along with Plaintiffs, for such inquiry merely distracts from the issue of whether just cause existed to fire Plaintiffs. Lastly, the Court has already disallowed a claim that Plaintiffs were misled prior to the implementation of the Program, and in any event finds such evidence irrelevant since the CBA was binding once its was agreed to, and as previously observed, Plaintiffs quickly became aware of the consequences of failing to meet efficiency standards.

As stated above, the Court GRANTS summary judgment on the hybrid breach of fair duty of representation and breach of CBA claim.

### 3. Race and Age Discrimination

Preliminarily, Simmons asserts that Plaintiff C. Williams has abandoned his age discrimination claim by failing to respond to Defendant's argument that C. Williams' claim is barred by his failure to include it in his charge of discrimination. Simmons correctly argues that because Plaintiff has failed to exhaust his administrative remedies, this Court may not consider his claim; the Court GRANTS summary judgment against him.

 Courts do not have jurisdiction to consider claims brought under Title VII unless the aggrieved party has first exhausted his administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e–5(f)(1); *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. Of San Antonio,* 40 F.3d 698, 711 (5th Cir.1994); *Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1279 (5th Cir.1994). Therefore, civil complaints filed under Title VII may only consist of discrimination like or related to allegations contained in the EEOC charge. *National Ass'n of Gov't Employees,* 40 F.3d at 711. The ADEA also requires a plaintiff to first file a charge with the EEOC; thus, the same requirement would apply to age discrimination claims. *See* 29 U.S.C. § 626. The EEOC charge serves the primary purpose of providing the employer with notice of the alleged discrimination so that it may begin to activate appropriate conciliatory measures. *Terrell v. United States Pipe & Foundry Co.,* 644 F.2d 1112, 1122–23 (5th Cir.1981), *vacated on other grounds,* 456 U.S. 955,

102 S.Ct. 2028, 72 L.Ed.2d 479 (1982). Accordingly, the failure to assert a claim of discrimination in the EEOC charge or for it to be developed in the course of a reasonable EEOC investigation of that charge prohibits the claim from later being brought in a civil suit. *National Ass'n of Gov't Employees*, 40 F.3d at 711–12. Filing a timely complaint with the Texas Commission on Human Rights is similarly a precondition to bringing suit under the Texas Commission on Human Rights Act, Tex. Labor Code § 21.001 et seq. (1996). *Twine v. Dickson*, 1999 WL 20979, at *2 (N.D.Tex.1999).

 Neither the verbatim allegations of the EEOC charge nor the actual scope of the EEOC's investigation will determine the limits of a plaintiff's civil complaint. *Clark*, 18 F.3d at 1280. Courts instead look at all of the information presented to the EEOC and determine what allegations would reasonably be expected to grow from the EEOC investigation. *Clark*, 18 F.3d at 1280 n. 9; *Clemmer v. Enron Corp.*, 882 F.Supp. 606, 610 (S.D.Tex.1995) ("The reasonable limits of an EEOC investigation have been held to include ... claims which arise as a reasonable consequence of the claims alleged in the EEOC charge."). In *Clark*, the court made this determination by looking at the EEOC charge along with the attached affidavit. Evidently C. Williams only filed a race discrimination claim as he did not check the box or otherwise indicate on the EEOC form any age discrimination, and makes no showing of any relation among his age and race claims in the EEOC investigation. Simmons' App. p. 118, 198. Thus, summary judgment is GRANTED as to C. William's age discrimination claim.

 The Court now turns to the substance of the discrimination claims. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of [his] ... race." 42 U.S.C. § 2000e–2(a)(1). The Texas Commission on Human Rights Act ("TCHRA") also prohibits discrimination based on race or age. Vernon's Tex.Code Ann., Labor Code § 21.051 (1996). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court originally set out the framework for analyzing Title VII employment discrimination claims. 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Supreme Court elaborated upon this framework in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under the *McDonnell Douglas/St. Mary's* scheme, Plaintiff must first establish a prima facie case of discrimination. *See St. Mary's*, 509 U.S. at 506, 113 S.Ct. 2742. Such a prima facie case of race discrimination is established if Plaintiff provides evidence that he (1) was a member of a protected group, African–American; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by a similarly qualified employee outside the protected class. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir.1997).

 Claims brought under the Age Discrimination in Employment Act ("ADEA") are subject to the same standards. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 965 (5th Cir.1999). *See also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (assuming the same standards apply). A prima facie case claim under the ADEA is similarly established if the plaintiff provides evidence that he: (1) was discharged; (2) was qualified for the position; (3) was within the protected age class—over 40—at the time

of discharge; and (4) was either replaced by a younger person or by a person outside the protected class, or otherwise discharged because of his age. *Stults v. Conoco, Inc.,* 76 F.3d 651, 656 n. 2 (5th Cir.1996). Claims of discrimination under Texas law are also evaluated under the Title VII evidentiary framework. *Farrington v. Sysco Food Servs.,* 865 S.W.2d 247, 251 (Tex.App.1993). If summary judgment is appropriate as to a Title VII claim, it is also appropriate under Texas law. *Patton v. United Parcel Serv.,* 910 F.Supp. 1250, 1262, 1270 (S.D.Tex.1995). Section 1981 cases are also evaluated under the Title VII evidentiary framework, and the summary judgment analysis should similarly be the same under both statutes. *Harrington v. Harris,* 118 F.3d 359, 367 (5th Cir.1997).

Once the plaintiff has successfully established a prima facie case, he/she has raised a rebuttable presumption of discrimination and shifted the burden to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *St. Mary's,* 509 U.S. at 506, 113 S.Ct. 2742. If the employer satisfies this burden of production, the plaintiff must then present evidence that the reason proffered by the defendant is actually a pretext for discrimination and that the defendant's employment decision was in fact informed by discriminatory motives. *Id.* at 507, 113 S.Ct. 2742. Thus, the defendant's successful rebuttal of the presumption created by the prima facie case requires the plaintiff to present more specific evidentiary support for his or her allegation of discriminatory intent. *See Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996). The defendant is entitled to summary judgment where no rational factfinder could conclude that the action was discriminatory. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The

ultimate burden of persuasion at trial, of course, rests squarely on the plaintiff. *St. Mary's,* 509 U.S. at 508, 113 S.Ct. 2742; *Stults,* 76 F.3d at 657.

In the instant case, Plaintiffs bring claims against Defendant Simmons for race and age discrimination. Plaintiffs allege that Simmons' decision to terminate them, twice, was based upon their race and age.

 In order to defeat Defendant Simmons' Motion for Summary Judgment, Plaintiffs must first establish their prima facie case of race and age discrimination. To establish a prima facie case, Plaintiffs must establish all four elements. First, Plaintiffs must have suffered an adverse employment decision. It is undisputed that Plaintiffs were fired from their employment. Second, Plaintiffs had to be qualified for the position. The Court has already determined that Plaintiffs were fired for the just cause of not performing their jobs; thus, they were not qualified. A claim of discrimination must fail. However, the Court will assume *arguendo* that Plaintiffs were qualified based upon their many years of successful production. Third, Plaintiffs have to fall within the protected classes. Plaintiffs are African–Americans over age 40. Fourth, Plaintiffs must show that they were either replaced by someone outside the protected class or otherwise discriminated against because of their race or age. Plaintiffs were allegedly replaced by Hispanic workers who may have been illegal aliens, but their age is unclear. Pl's App. p. 199–200, 216–17. Plaintiffs offer only A. Williams' testimony that Manuel Facunda told him that Simmons wanted to replace them with younger Hispanic employees. Pl's App. p. 148–50.

 Supposing Plaintiffs had met their prima facie case, Simmons would have to articulate a legitimate, non-dis-

criminatory reason for Plaintiffs' termination. Simmons has amply done so; Plaintiffs were fired for failing to meet production levels. As stated *supra*, under the *McDonnell Douglas/St. Mary's* framework, the burden now shifts to Plaintiff to demonstrate that Simmons' proffered reasons are actually a pretext for unlawful discrimination. The mere fact that a plaintiff believes his employer discriminated against him is insufficient to prove discrimination. *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 42 (5th Cir. 1996). Thus, Plaintiffs' assertions of the same are irrelevant without supporting evidence. Pl's App. p. 120; Simmons' App. p. 113 (citing "seniority" as the motivation for race discrimination). Further, the evidence that most hogringers were Hispanic and that Plaintiffs were probably the two oldest hogringers with the most seniority has no probative value on its own. Pl's App. p. 15, 19, 90, 120, 156. Plaintiffs admit they did not hear anyone in Simmons management say anything that would lead them to believe they were discriminated against because of their race. Simmons' App. p. 67–69, 114.

Plaintiffs' citation to *Blow v. San Antonio* is unavailing, for in that case there was a genuine reason to doubt the truth of the employer's explanation for apparently discriminatory behavior, unlike in the case before this Court. *See* 236 F.3d 293, 297–98 (5th Cir.2001). Debbie Blair's suggestion to A. Williams that he retire also fails to evince an intent to discriminate. Pl's App. p. 142. Further, even if Blair had supervisory power over Plaintiffs and her comments were proximate in time and related to Plaintiffs' termination, no factfinder could reasonably infer age-based animus from her innocuous suggestion to A. Williams. *Cf. Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir.2000). Additionally, Plaintiffs' recollection that Thomas saw discrimination in a couple of ways and that he would pursue the grievance to arbitration is insufficient to permit an inference of age or race discrimination, as the statement is a mere assertion without evidence, and the type of discrimination is wholly unspecified. Pl's App. p. 122–126, 163–64. Thomas's unrebutted testimony clarifies that he was speaking of discrimination concerning the standards at different Simmons plants, not race or age discrimination. Simmons' App. p. 346. All of the evidence taken together does not establish that Simmons' stated reason for firing Plaintiffs was a pretext for discrimination. Plaintiffs do not offer sufficient evidence to permit a reasonable finder of fact to infer that Simmons intended to discriminate or did discriminate on the basis of age or race. Summary judgment is GRANTED as to all discrimination claims of both Plaintiffs.

**4. Proper Parties to Suit**

The Union claims that District 12 did not owe Plaintiffs a duty of fair representation because District 12 is a mere geographic designation of the international union and is not a "labor organization" under 29 U.S.C. § 152(5). Union's App. p. 183–85. Seeing no dispute from Plaintiffs, the Court agrees. As such, the Court GRANTS summary judgment as to District 12.

**IV. CONCLUSION**

For the reasons stated above, the Court DENIES Plaintiffs' Motion for Leave to Amend and GRANTS summary judgment for each Defendant as to all Plaintiffs' claims.